NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12138
SJC-12184


GUARDIANSHIP OF YOSSELIN GUADALUPE PENATE.

DEPARTMENT OF REVENUE[1] vs.  MANUEL MORALES LOPEZ & another.[2]



Suffolk.      January 6, 2017. - June 9, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Alien.  Probate Court, Jurisdiction.  Jurisdiction, Probate
     Court.



     Petition for appointment of a guardian filed in the Suffolk
Division of the Probate and Family Court Department on September
14, 2015.

     A motion for special findings of fact was heard by Virginia
M. Ward, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

     Complaint to establish paternity filed in the Suffolk
Division of the Probate and Family Court Department on November
25, 2014.

     A motion for special findings of fact was heard by Virginia
M. Ward, J.

_____

     [1] On behalf of Norma Cecilia Mauricio Guzman.

     [2] E.G. (a pseudonym), interested party.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Valquiria C. Ribeiro for Marvin H. Penate.
Jennifer B. Luz (Joshua M. Daniels also present) for E.G.
Elizabeth Badger for Kids in Need of Defense & others, amici curiae.
The following submitted briefs for amici curiae:
Benjamin C. Mizer, Principal Deputy Assistant Attorney General, William C. Peachey, Erez Reuveni, & Joseph A. Darrow, of the District of Columbia, for the United States.
Mary K. Ryan & Meghan S. Stubblebine for American Immigration Lawyers Association, New England Chapter, & others.


HINES, J.  In these appeals brought by E.G., an eight year old undocumented immigrant from Guatemala, and Yosselin Guadalupe Penate, a nineteen year old undocumented immigrant from El Salvador, we consider for the second time[3] the statutorily mandated role of the Probate and Family Court (and the Juvenile Court) in a juvenile's application for special immigrant juvenile status (SIJ) under 8 U.S.C. § 1101(a)(27)(J) (2012).  Congress established the SIJ status classification "to create a pathway to citizenship for immigrant children," Recinos v. Escobar, 473 Mass. 734, 737 (2016), who have been abused, neglected, or abandoned by one or both parents.  The issue presented in these appeals is whether a judge may decline to

---

[3] See Recinos v. Escobar, 473 Mass. 734, 739-743 (2016) (recognizing Probate and Family Court jurisdiction to make special findings under 8 U.S.C. § 1101[a][27][J] [2012], in cases involving persons between eighteen and twenty-one years of age).

make special findings based on an assessment of the likely merits of the movant's application for SIJ status or on the movant's motivation for seeking SIJ status.  The judge implicitly determined that neither child would be entitled to SIJ status based on her interpretation of the statute and declined to make special findings.  This was error.

We now clarify the role of the judge with respect to a juvenile's motion for special findings necessary to apply for SIJ status under 8 U.S.C. § 1101(a)(27)(J).  Because immigration status is a matter solely within Federal jurisdiction, the merits of a juvenile's application for SIJ status will be determined in immigration proceedings in accordance with Federal law.  See Recinos, 473 Mass. at 738.  Under the statute, the judge's sole function is to make the special findings, and to do so in a fashion that does not limit Federal authorities in determining the merits of the juvenile's application for SIJ status.  Therefore, we conclude that on a motion for special findings, the judge shall make such findings without regard to the ultimate merits or purpose of the juvenile's application. To avoid any unnecessary entanglement in interpreting whether SIJ status requires a showing of neglect or abandonment by one

or both parents, we also conclude that the judge shall make special findings only as to the parent named in the motion.[4]

Background.[5] 1. <u>Yosselin Penate</u>. Yosselin[6] was born in 1997 in El Salvador to Marleny D. Penate-Velasquez. The father abandoned Marleny before Yosselin was born, and is not listed on her birth certificate. Yosselin has never had any contact with her father and does not know his identity. Until her teenage years, Yosselin lived in a small house with her mother, grandfather, uncle, three brothers, and two cousins. Of the adults living in the household, only Yosselin's uncle was employed. Having his own children to provide for, the uncle's income was rarely sufficient to cover food and clothing for Yosselin and her siblings.

---

[4] We acknowledge the amicus brief submitted by the United States in E.G.'s case in support of neither party; and the amicus briefs submitted in each case in support of the appellants by the American Immigration Lawyers Association, New England Chapter; the Boston College Immigration Clinic; the Catholic Charitable Bureau of the Archdiocese of Boston, Inc.; the Central West Justice Center; the Children's Law Center of Massachusetts; Community Legal Services and Counseling Center; Greater Boston Legal Services; the Immigration Legal Assistance Program of Ascentria Care Alliance; Justice Center of Southeast Massachusetts; Kids in Need of Defense; Massachusetts Law Reform Institute; MetroWest Legal Services; and the Political Asylum/Immigration Representation Project.

[5] We recite the facts as drawn from the limited record before us.

[6] Because Yosselin and her uncle Marvin share a last name, and her mother's last name is similar, we refer to the family members by their first names.

Because her mother was unemployed, Yosselin did not have access to medical treatment. At age fourteen, Yosselin took a job to help with family expenses. While working, Yosselin continued to attend school, but her job responsibilities frequently prevented her from completing her homework. Although she added to the family's income, Yosselin's living conditions remained poor. In 2013, when Yosselin was fifteen years of age, she began receiving death threats from a local gang. The gang demanded that she either join the gang or be killed. Because Marleny was unable to properly provide financial resources for Yosselin or protect her from the gang, Marleny determined that it would be best for the family if Yosselin left for the United States to live with her uncle, Marleny's brother, Marvin H. Penate, who lives in Massachusetts. In accordance with her mother's wishes, Yosselin traveled to the United States and has lived with Marvin in Revere since that time. Since her arrival in the United States, Yosselin has had access to proper medical care, is enrolled in school, and has adequate food and clothing. Although Yosselin remains in contact with her mother in El Salvador, she wishes to continue living with Marvin in the United States.

In September, 2015, when Yosselin was seventeen years of age, Marvin filed a petition in the Probate and Family Court seeking guardianship of her, and she then filed a motion seeking

the requisite special findings for SIJ status.  In her motion for special findings, Yosselin asserted that she was dependent on the Probate and Family Court, that reunification with her mother was not viable due to neglect, and that return to El Salvador was not in her best interests.[7]  Following a short hearing, the Probate and Family Court judge issued a written decision, dismissing the guardianship petition and declining to make special findings as to the first and third prongs.  With respect to the second prong, the judge stated, "The sole problem here is that [Yosselin] must find a legal way to re-enter this country if in fact she is deported.  This [c]ourt does not find that 'reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or similar basis found under State law' 8 U.S.C. § 1101(a)(27)(J)."  Marvin appealed from this decision, and we transferred the case to this court on our own motion.

2.  E.G.  E.G. was born in Guatemala in 2008 to Norma Cecilia Mauricio Guzman.  After finding out that Guzman was pregnant, E.G.'s father, Manual Morales Lopez, abandoned Guzman, and he moved to the United States before E.G. was born. Following his move to the United States, Lopez made no effort to contact or take care of E.G. and offered Guzman negligible

---

[7] Yosselin filed a second motion for special findings in December, 2016, asserting neglect and abandonment by her father. That motion is pending in the Probate and Family Court.

financial support.  After E.G.'s birth, Lopez stopped providing financial support altogether.  Because Lopez ignored Guzman's efforts to inform him of E.G.'s birth and had no relationship with E.G., Guzman did not list Lopez on E.G.'s birth certificate.

During the early years of E.G.'s life, she and her half-brother were raised by their mother in Guatemala.  As a single mother, Guzman was unable to earn enough money to support her two children.  She left for the United States without her children when E.G. was three years old and her half-brother was ten years old.  Once in the United States, Guzman remained in contact with her children and attempted unsuccessfully to secure reliable care from members of E.G.'s extended family and a woman whom Guzman paid for child care services.  Neither proved reliable.  Consequently, E.G. was looked after by her half-brother or, when he was at school, left completely alone.  Although initially E.G. attended kindergarten in Guatemala, after three months she had to stop going because the walk to school was far and too dangerous for E.G. to walk alone.  On one occasion, E.G. suffered a head injury and was hospitalized after falling into a large hole.  On another occasion, she was attacked by a stray dog when she was out on the street alone.

In 2014, with no possibility of a safe or secure life in Guatemala, E.G. and her brother left Guatemala for the United

States.  The two children were captured while attempting to cross into the United States from Mexico.  Following their capture in Texas, the Office of Refugee Resettlement contacted Guzman, who by then lived in Massachusetts, and released the children to her custody.  Since that time, both children have lived with their mother and other members of their family in Massachusetts.  Unlike in Guatemala, in the United States, E.G. lives with responsible adults who care for her, and she attends school.

After moving to the United States, Lopez made no effort to contact E.G.  E.G. met Lopez for the first time when he appeared for a court-ordered paternity test, which the Department of Revenue had sought on E.G.'s behalf.  Since that time, Lopez has not been in contact with E.G. and has provided little meaningful financial support.  Although Lopez is aware that E.G. now lives in Massachusetts, the State where he also resides, he has expressed no interest in establishing a relationship with her.

Appearing as an interested party to the paternity suit, E.G. filed a motion for special findings pursuant to 8 U.S.C. § 1101(a)(27)(J),[8] as well as an affidavit from her mother.  In

---

[8] The State court must find (1) that the minor is "dependent on a juvenile court"; (2) that his or her "reunification with [one] or both . . . parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and (3) that "it would not be in [his or her] best interest to be

her motion, E.G. stated her intent to petition for SIJ status and argued that she was dependent on the Probate and Family Court, that reunification with her father was not viable due to neglect and abandonment, and that it was not in her best interest to return to Guatemala. During the hearing on the paternity issue, the Probate and Family Court judge denied E.G.'s motion for special findings. While the judge did not explicitly articulate a reason for denying E.G.'s motion, she noted, "[E.G.] is in the custody of her mother, so I'm not doing special findings." E.G. appealed from this decision, and we transferred the case to this court on our own motion.

Discussion. 1. Statutory overview. We begin by providing an overview of the SIJ status provision. In 1990, Congress created the SIJ provisions of the Immigration and Nationality Act to enable immigrant children who have been subject to abuse, neglect, or abandonment by one or both of their parents to remain in the United States and apply for lawful permanent residence. Recinos, 473 Mass. at 734, 737, citing 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11 (2016). Applying for SIJ status entails a multistep process involving both State courts and Federal agencies. 8 U.S.C. § 1101(a)(27)(J). To apply to

returned" to his or her home country. 8 U.S.C. § 1101(a)(27)(J).

the United States Citizenship and Immigration Services (USCIS)[9] for SIJ status, the "immigrant child"[10] must first obtain the following special findings from a "juvenile court":[11] (1) the child is dependent on a juvenile court or, under the custody of an agency or department of a State, or an individual or entity appointed by the court or State; (2) reunification with one or both parents is not viable due to abuse, neglect, or abandonment; and (3) returning the child to his or her country of origin would not be in the child's best interest. 8 U.S.C. § 1101(a)(27)(J).

After obtaining special findings, the immigrant child must file a petition, including the special findings, with USCIS. 8 C.F.R. § 204.11. Once submitted, USCIS conducts a plenary review of the petition. Id. See USCIS Policy Manual, vol. 6,

_____

[9] The United States Citizenship and Immigration Services (USCIS) bears responsibility for lawful immigration to the United States. See Recinos, 473 Mass. at 735 n.2.

[10] For purposes of special immigrant juvenile (SIJ) status, "child" is defined as a person under twenty-one years of age who is unmarried. 8 U.S.C. § 1101(b)(1).

[11] For the purposes of 8 U.S.C. § 1101(a)(27)(J), a "[j]uvenile court" is defined broadly as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). In Massachusetts, determinations regarding the care and custody of juveniles fall within the jurisdiction of both the Juvenile Court and the Probate and Family Court, and thus both courts may make the requisite special findings under § 1101(a)(27)(J). Recinos, 473 Mass. at 738.

pt. J(4) (2016).  As the United States notes in its amicus brief, during this review, USCIS generally defers to the juvenile court's determinations, and does not reweigh the evidence insofar as it relates to matters of State law.  See USCIS Policy Manual, vol. 6, pt. J(3).  Ultimately, USCIS, on behalf of the Secretary of Homeland Security, makes the final determination whether to grant SIJ status.  See 8 U.S.C. § 1101(a)(27)(J)(iii); USCIS Policy Manual, vol. 6, pt. J(4)(E)(1) (noting that Department of Homeland Security delegates authority to consent to grant of SIJ classification to USCIS).

2.  The role of the Probate and Family Court.  Although "[t]he process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of [S]tate and [F]ederal systems," Recinos, 473 Mass. at 738, quoting H.S.P. v. J.K., 223 N.J. 196, 209 (2015), a person's immigration status remains a matter governed solely by Federal law.  Thus, whether a child qualifies for SIJ status and whether to grant or deny an immigrant child's application for SIJ status is beyond the jurisdiction of the Probate and Family Court.  The State court's role is solely to make the special findings of fact necessary to the USCIS's legal determination of the immigrant child's entitlement to SIJ status.  8 U.S.C. § 1101(a)(27)(J)(iii). Congress delegated this task to State courts because it

recognized "the distinct expertise State courts possess in the area of child welfare and abuse," which makes them best equipped to shoulder "the responsibility to perform a best interest analysis and to make factual determinations about child welfare for purposes of SIJ eligibility."  Recinos, supra.

Because this fact-finding role is integral to the SIJ process, the Probate and Family Court judge may not decline to make special findings if requested by an immigrant child under § 1101(a)(27)(J).  Acting within the limits of this fact-finding role, the judge must make the special findings even if he or she suspects that the immigrant child seeks SIJ status for a reason other than relief from neglect, abuse, or abandonment.  The immigrant child's motivation for seeking the special findings, if relevant to the child's entitlement to SIJ status, ultimately will be considered by USCIS in its review of the application. The immigrant child's motivation is irrelevant to the judge's special findings.

The judge's obligation to make the special findings also applies regardless of whether the child presents sufficient evidence to support a favorable finding under each of the criteria set forth in § 1101(a)(27)(J).  See Howlett v. Rose, 496 U.S. 356, 373 (1990), quoting Mondou v. New York, New Haven, & Hartford R.R., 223 U.S. 1, 57-58 (1912) ("'The existence of the jurisdiction creat[ed] an implication of duty to exercise

it,' . . . which could not be overcome by disagreement with the policy of the [F]ederal Act").  To conclude otherwise would upset the balance struck between the State and Federal roles in the SIJ status determination, and intrude in the area of immigration that lies exclusively within the purview of the Federal government.  See Recinos, 473 Mass. at 738.

As further guidance for the judge to whom a motion for special findings has been presented, we direct that the findings be limited to the parent with whom the child claims reunification is not viable due to abuse, neglect, or abandonment.  Thus, where an immigrant child asserts in her or his motion for special findings that reunification is not viable with only one parent, the Probate and Family Court shall limit its findings to that parent.  In the event that the child asserts that reunification is not viable with both parents, the court shall make findings as to both parents.  In our view, no more and no less is required of the Probate and Family Court to meet its statutorily mandated role.

We recognize the disparate approaches among State courts to this prong of the special findings required under the statute.  Some State courts have interpreted the statute to mean that the immigrant child must establish that reunification is not viable as to both parents, while others have proceeded on the assumption that reunification is not viable if only one parent

has been shown to have abused, neglected, or abandoned the immigrant child. See, e.g., In re Israel O., 233 Cal. App. 4th 279, 288-289 (2015); In re Estate of Nina L., 2015 IL App (1st) 152223, ¶ 27; In re Interest of Erick M., 284 Neb. 340, 345-346 (2012); Matter of Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 110-111 (N.Y. 2013). We doubt the wisdom in joining the debate among State courts over whether the immigrant child must demonstrate that reunification is not viable with only one or with both parents. We have considered and are persuaded by the reasoning in the United States's amicus brief and by the Supreme Court of New Jersey in H.S.P., 223 N.J. at 213, that interpretation of the "[one] or both" statutory language is not necessary. The State court's duty to make special findings is not dependent on the resolution of the ambiguous language, and thus we decline to endeavor to do so. See id. (declining to construe "[one] or both" language as used in § 1101[a][27][J] because "[s]uch a task is exclusively the province of the [F]ederal government").

3. Special findings for Yosselin. In the Probate and Family Court judge's written judgment of dismissal on the petition for appointment of guardianship, the judge addressed Yosselin's motion for special findings, but only as to the viability of the parental reunification prong. After concluding that Yosselin's mother did not intend to abandon her, the judge

posited that the sole reason for the guardianship petition was to allow Yosselin to request special findings and ultimately "take advantage of the [SIJ] [s]tatus program." The judge went on to note,

> "While it appears from her affidavit that she may have good reasons for leaving El Salvador, as an emancipated eighteen year old adult, Yosselin may now choose herself where she wishes to live. She is in a voluntary living arrangement with her uncle. The sole problem here is that she must find a legal way to re-enter this country if in fact she is deported. This [c]ourt does not find that 'reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or similar basis found under State law.'"

Here again, the judge's special findings determination crossed into territory reserved to the Federal authorities. Instead of determining whether Yosselin's mother abandoned or neglected her under Massachusetts law, the judge focused on the alleged motive behind the petition for guardianship and the motion for special findings. This was error, as was the judge's failure to make findings as to the dependence on the Probate and Family Court and best interests prongs of the special findings as required by § 1101(a)(27)(J)(i)-(ii). The Probate and Family Court judge must make factual findings as to all three prongs of the special findings analysis, under all circumstances. Therefore, we reverse and remand Yosselin's case to the Probate and Family Court for further fact finding consistent with this opinion.

Moreover, although Yosselin asserted in her motion for special findings that reunification is not viable due to abuse and neglect by her mother, the record establishes that Yosselin also filed a motion for special findings as to her father. Yosselin is entitled to special findings on this motion as well, regardless of whether reunification with the mother is viable. To ensure that Yosselin, who is approaching her twenty-first birthday, may timely exercise her right to seek SIJ status, the Probate and Family Court shall conduct a hearing forthwith on both motions for special findings. While we express no view as to the substance of the special findings as to the mother, we note the judge's acknowledgement that Yosselin has never known her father and that, in fact, he is "unknown." In these circumstances, a finding that reunification with the father is not viable due to neglect or abandonment is difficult to avoid.

4. Special findings for E.G. In E.G.'s case, the Probate and Family Court judge failed to make any factual findings with respect to E.G.'s motion for special findings. Based on the record, the judge's reason for declining to make the special findings was due, at least in part, to the fact that E.G. is in her mother's custody. As we have said here, such a rationale for declining to make special findings is inconsistent with the role of the Probate and Family Court under § 1101(a)(27)(J). Therefore, we reverse and remand E.G.'s case to the Probate and

Family Court for further fact finding consistent with this opinion.

Because the Probate and Family Court judge declined to make special findings based on her review of documentary evidence, we "stand[] in the same position as did the [motion] judge" with respect to evaluating the written evidence and reaching a conclusion as to the special findings determination. See Commonwealth v. Novo, 442 Mass. 262, 266 (2004), quoting Berry v. Kyes, 304 Mass. 56, 57 (1939). Accordingly, we direct the Probate and Family Court judge to make the following findings: (1) E.G. is dependent on the Probate and Family Court; (2) E.G.'s reunification with her father is not viable due to abuse, neglect, or abandonment; and (3) it is not in E.G.'s best interest to return to Guatemala.

Based on the record before us, it is clear that E.G.'s father, the parent on whom the allegation of neglect and abandonment is predicated, has at the very least neglected, if not also abandoned the child. The Massachusetts Code of Regulations defines "[n]eglect" as

> "failure by a caretaker, either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability and growth, or other essential care; provided, however, that such inability is not due solely to inadequate economic resources or solely to the existence of a handicapping condition" (emphasis in original).

110 Code Mass. Regs. § 2.00 (2008). Since E.G.'s birth, Lopez has made no attempt to establish a parental relationship with E.G. or materially support her in a meaningful way. Prior to appearing for a court-ordered paternity test, Lopez made no effort to even meet E.G., despite her presence in Massachusetts.

Because it is clear from the record that Lopez has, at the very least, neglected E.G., she is, as a matter of law, "dependent on the Probate and Family Court for the opportunity to obtain relief." Recinos, 473 Mass. at 743. With respect to the second inquiry -- whether E.G.'s reunification with "[one] or both" of her parents is not viable due to abuse, neglect, or abandonment -- we reiterate that the court's findings will be limited to E.G.'s father. Thus, the fact that E.G. lives in the United States with her mother has no bearing on the judge's duty to make the special findings, or the substance of the finding. Accordingly, E.G. meets the criteria for the second prong of the special findings analysis.

Last, the record clearly establishes that E.G.'s interests are not best served by returning to Guatemala, the country of origin. If returned to Guatemala, E.G. would, once again, live with little if any adult supervision. In fact, her circumstances if forced to return to Guatemala would be even more dire considering that her adolescent brother, who looked

after her when the two were living in Guatemala, also lives in the United States.

5.  Guardianship.  Marvin also urges this court to find error in the Probate and Family Court judge's dismissal on the petition for appointment of a guardian.  Because the outcome of the guardianship petition has no bearing on the outcome of this case, we decline to reach the issue.[12]  First, any guardianship would have terminated on Yosselin's eighteenth birthday.  Second, under Recinos, 473 Mass. at 743, if Yosselin can establish that reunification with her mother or father is not viable due to abuse, neglect, or abandonment, she as a matter of law is dependent on the Probate and Family Court for the opportunity to obtain SIJ status relief.

Conclusion.  For the foregoing reasons, we reverse the judgments of the Probate and Family Court as to E.G.'s and Yosselin's motions for special findings, and remand the matters for proceedings consistent with this opinion.

So ordered.

---

[12] We also decline to issue a stay sua sponte, as amici urge, for two reasons.  First, although Marvin moved for a stay below, he has not moved for a reconsideration of the denial of the motion, nor has he raised the issue in his brief on appeal.  Second, amici's arguments fail to justify a stay sua sponte.