**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 10, 2025**

# In the Court of Appeals of Georgia

A24A1532. MENDOZA v. MENDOZA GARCIA.

GOBEIL, Judge.

This child custody case is back in our Court after we previously remanded it to the trial court to make additional findings of fact. See *Mendoza v. Mendoza Garcia*, ___ Ga. App. ___ (March 11, 2024) (unpublished) ("*Mendoza I*"). Ana Garcia Mendoza ("the mother") now appeals from the trial court's order on remand finding that reunification of the minor child at issue with the father remains viable and its order denying her motion for reconsideration of this finding. For the reasons explained below, we affirm the trial court's judgment.

According to the petition, the mother and Eleomar Mendoza Garcia ("the father") are the parents of a minor child, C. A. G. M., who was born in Mexico in

2012. The mother migrated to the United States shortly after the child's birth, and the child remained in Mexico with her maternal grandmother until 2022, when the mother hired people to bring the child to the United States. Since arriving in the United States, the child has resided with the mother and the mother's other child in Gwinnett County and is thriving in her new home.

In January 2023, the mother filed a petition for sole custody of the child. In the petition, the mother alleged that the father had never seen, visited, communicated with, or provided any financial support for the child, and it was in the child's best interest that the mother receive sole legal and physical custody. The mother simultaneously filed a motion for findings of fact pursuant to OCGA § 9-11-52 (a), requesting that the trial court make specific findings as to whether reunification between the father and the child was viable due to his abandonment of the child and that it was not in the child's best interest that she return to Mexico. The mother alleged that these findings were necessary so that the child could later petition for Special Immigrant Juvenile ("SIJ") status with the United States Citizenship and Immigration Services.

The father was served via publication, as the mother averred that she did not know his address or how to contact him. The mother stated that she contacted the father's brother, who refused to give her any information on the father's whereabouts. The trial court held a hearing and heard testimony from the mother. The mother testified that the father has never communicated with the child, the mother has not seen the father since 2011 when she informed him about the pregnancy, and she did not know the father's current whereabouts. She also testified that her mother, who had cared for the child in Mexico, was now sick and could no longer care for the child; there was no one in Mexico to care for the child, and the child would be in danger if she were forced to return to Mexico.

The trial court issued an order granting the mother sole custody. The trial court found that the father had abandoned the child pursuant to OCGA § 19-9-41 (which concerns child custody proceedings) and that the mother was entitled to sole custody of the child pursuant to OCGA § 19-7-25. The trial court also stated the order may be used to support a petition for SIJ status for the child. The mother moved for reconsideration, requesting additional specific findings of fact that reunification with

the father was not viable and that it was not in the child's best interests to return to Mexico. The trial court denied the motion. The mother appealed.

In *Mendoza I*, our Court affirmed the trial court's judgment granting sole custody of the child to the mother. Slip Op. at 9. However, we remanded the case to the trial court to make additional findings of fact necessary for the child's SIJ application. Relying on a previous decision of this Court, *In the Interest of J. J. X. C.*, 318 Ga. App. 420, 426 (734 SE2d 120) (2012), we concluded that the trial court had an affirmative duty, which it failed to complete, to consider the SIJ factors and make findings as requested by the mother. We thus remanded the case and instructed the trial court to make factual findings, specifically on two SIJ factors: (1) whether reunification between the child and the father was viable in light of the father's abandonment of the child; and (2) whether it was in the child's best interest for her not to return to Mexico. *Mendoza I*, Slip Op. at 1, 7-9.

On remand, the trial court issued another order on April 10, 2024. First, the trial court reiterated its finding that the child had been abandoned by the father. The court then found that the "remedy" being sought by the mother was "being used for the purpose of obtaining legal permanent resident status [for the child], rather than for

the purpose of obtaining relief from abuse or neglect or abandonment," which the court found adversely affected the mother's credibility. The court went on to find that reunification with the father had never seriously been attempted by anyone, including the mother and "therefore remains viable[.]" The court noted that it was unclear whether the father had ever been informed that he is the father of this child, as the mother stated that she had not spoken with the father since before the child's birth. Similarly, the court noted that it appeared the father, who is likely in the United States according to the mother's best knowledge, has not been informed that the child is also in the United States and "available to him." Second, the trial court found that it was not in the child's best interest to return to Mexico (a finding that the mother does not contest on appeal).

The mother filed a motion for reconsideration, arguing that the court's finding that reunification with the father is viable was not supported by the evidence. She included affidavits from herself and the child regarding the father's abandonment of the child. The mother averred that, since the court's April 2024 order, she had made additional attempts to locate the father to satisfy the court, and was able to speak to him on the phone. During the call, she claims the father declared that he "wanted

5

nothing to do with" the child — showing that reunification is not possible, as the father is unwilling to participate. The trial court denied the motion for reconsideration, finding the mother and her evidence to be non-credible and non-persuasive. The court specifically noted that its credibility determination was based in part on the mother's previous insistence that she could not locate the father, yet was able to contact him within days of receiving the court's adverse ruling. The mother now appeals.

At the outset, because the mother does not challenge the trial court's finding that it was in the child's best interest not to return to Mexico, we affirm that part of the trial court's order without further discussion. In her unopposed appeal, the mother argues that the trial court erred in finding that reunification between the child and the father remains viable. She asserts that (1) this finding was contrary to the evidence; (2) the trial court erroneously found that reunification must be attempted before being deemed not viable; and (3) the trial court erroneously considered her motive in seeking the findings when making its determination.

To assess the mother's enumerations of error, we consider the State juvenile courts' role relative to the Federal SIJ classification process. "Federal law provides

a path to lawful permanent residency in the United States to resident alien children who qualify for [SIJ] status. Congress created SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents." *In the Interest of J. J. X. C.*, 318 Ga. App. at 424 (citations and punctuation omitted). See also 8 USC § 1101 (a) (27) (J); 8 CFR § 204.11. The decision regarding SIJ status rests with the federal government. And in order to be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. 8 CFR § 204.11 (b). Further, the child must have been declared dependent by a state juvenile court[1] or be placed under the custody of an "individual or entity appointed by a State or juvenile court." 8 USC § 1101 (a) (27) (J) (i).

Moreover, "the juvenile court must have made two additional findings: (1) that reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous

---

[1] 8 CFR § 204.11 (a) defines "juvenile court" as "a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles."

country of nationality or country of last habitual residence." *In the Interest of J. J. X. C.*, 318 Ga. App. at 424 (citing 8 USC § 1101 (a) (27) (J) (i), (ii)) (punctuation omitted). See also 8 CFR § 204.11 (c) (1) - (2). Without this predicate order from a juvenile court, the child "cannot apply for SIJ classification. It is, therefore, not an exaggeration to say that the child's immigration status hangs in the balance." *In the Interest of H. D. G. H.*, 371 Ga. App. 34, 35-36 (899 SE2d 501) (2024) (citations and punctuation omitted). As we previously have stated, this process "affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *In the Interest of R. E. Z. B.*, 370 Ga. App. 236, 238 (896 SE2d 236) (2023) (citation and punctuation omitted).

We have found little Georgia case law reviewing a trial court's SIJ findings on their merits. However, we have acknowledged that the trial court "[is] authorized to conclude that [a] petitioner[ ] failed to present evidence to support the SIJ factors or that [her] evidence [is] not credible[.]" *In the Interest of J. J. X. C.*, 318 Ga. App. at 426. In the one published case from this Court reviewing such a situation, we used an abuse-of-discretion standard to determine if the trial court erred in its finding that

reunification with a parent remained viable. See *In the Interest of M. J. H.*, 371 Ga. App. 383, 386-389 (2) (898 SE2d 631) (2024).

The mother argues that the trial court's finding that the father abandoned the child "goes hand-in-hand with finding that reunification" with the father is not viable. She argues further that the trial court erred in finding that reunification must be attempted before it can be declared non-viable and that the trial court erred in relying on her motivation for bringing the petition in its consideration of the SIJ factors..

As to this final argument, we agree to some extent. The trial court began its April 2024 order by finding that the mother was seeking these findings for the purpose of obtaining legal permanent resident status for the child, rather than the purpose of obtaining relief from abuse or neglect or abandonment. While we have held that the purpose of the SIJ program is to protect abused, neglected, or abandoned children and not to merely achieve legal resident status for children, *In the Interest of J. J. X. C.*, 318 Ga. App. at 424, the state trial court does not determine whether the child in question ultimately qualifies under the program. "Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status

rests with the federal government."[2] *In the Interest of M. J. H.*, 371 Ga. App. at 387 (2) (citation and punctuation omitted). Thus, to the extent the trial court relied on its view of the mother's subjective motivation in filing the petition to reach its conclusion that reunification with the father remained viable, such a reliance would be erroneous.[3]

---

[2] We note that the petitioner's motivation in these cases is relevant to the child's SIJ application, but the ultimate determination of the petitioner's motivation is to be made by the federal agency, not the state trial court. See *In the Interest of J. J. X. C.*, 318 Ga. App. at 424 n. 3 (discussing legislative history on this issue). We are not striking the trial court's finding that the mother filed the instant petition for one purpose as opposed to the other. The finding will no doubt be relevant if the child applies for SIJ status. We are merely finding that the purpose of the petition should not have influenced the trial court's consideration of whether reunification was viable or what was in the child's best interest.

[3] Other jurisdictions have explicitly held that the purpose of the action underlying an SIJ application should not be considered by the state court when making the required findings. See, e.g., *B. R. C. M. v. Florida Dept. of Children & Families*, 215 So3d 1219, 1223 (Fla. 2017) ("If a child meets the statutory criteria for dependency, the child must be adjudicated accordingly, regardless of the child's motivations for seeking a dependency adjudication. Whether the petition seeks an adjudication to assist the child in applying for an immigration status under federal law is not a basis for summarily dismissing or denying the petition. The determination of whether an immigrant juvenile may obtain SIJ [status] is reserved for the federal immigration authorities.") (citation and punctuation omitted); *Kitoko v. Salomao*, 210 Vt. 383, 396 (215 A3d 698) (2019) ("Trial judges are not gatekeepers tasked with determining the legitimacy of SIJ petitions; that is exclusively the job of [the federal agency].") (citation and punctuation omitted); *Guardianship of Penate*, 477 Mass. 268, 275 (2) (76 NE3d 960) (2017) ("Acting within the limits of this fact-finding role, the judge must make the special findings even if he or she suspects that the immigrant child seeks SIJ status for a reason other than relief from neglect, abuse, or abandonment. The

However, our reading of the trial court's order is that it relied on its view of the mother's motivations to assess her credibility and the weight that should be given to her evidence, for which we see no error. The trial court, who has personally observed the petitioner and other witnesses, and viewed the evidence first-hand, is the ultimate arbiter of credibility in a case concerning child custody, which this is. See *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019) (in child custody cases, "[w]e will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations"); *New v. Goss*, 327 Ga. App. 413, 414 (2) (759 SE2d 266) (2014) ("We review the evidence in a custody case in the light most favorable to upholding the trial court's determination, because the trial court had the opportunity to observe the demeanor and attitude of the parties and their witnesses and assess their credibility.").

immigrant child's motivation for seeking the special findings, if relevant to the child's entitlement to SIJ status, ultimately will be considered by [the federal agency] in its review of the application. The immigrant child's motivation is irrelevant to the judge's special findings.").

11

Here, the trial court was authorized to find the mother and her evidence non-credible and non-persuasive, as it did. *In the Interest of J. J. X. C.*, 318 Ga. App. at 426. The mother argues that it is illogical to find that the father abandoned the child, but then find that reunification is viable. In the dependency context, relied upon by the mother, that may be true, as abandonment in that context is defined as parental "intent to forgo parental duties or relinquish parental claims." OCGA § 15-11-2 (1).

The child in this case, however, was not found to be dependent, as this did not come before the court as a dependency action. Here, the court found only that the child was abandoned for purposes of child custody, in order to grant the mother sole custody. "Abandoned" in this context, means that the court found that C. A. G. M. was "left without provision for reasonable and necessary care or supervision" by her father. OCGA § 19-9-41 (1). Such a definition does not necessarily require the father to have affirmatively given up his role as a parent. Thus, under this definition, the court's finding of abandonment is not necessarily inconsistent with the finding that reunification may still be viable.

And, even in the dependency context, where Georgia law does not require attempts at reunification in cases of abandonment, whether such reasonable efforts are

required is within the sole purview of the trial court. See also OCGA § 15-11-203 (a) (1) (trial courts may direct that reasonable efforts are not required to reunite a parent and child when aggravating circumstances are present); OCGA § 15-11-2 (5) (A) (abandonment is an aggravating circumstance). Further, the presumption "that reunification is detrimental" to the child in cases of abandonment is rebuttable, and, again, ultimately up to the trial court's consideration of the evidence in an individual dependency case. See OCGA § 15-11-204 (d) (1) - (4).

Accordingly, where the trial court ultimately found the mother in this case to be non-credible and her evidence to be non-persuasive, it did not abuse its discretion by finding that reunification with the father was viable, despite simultaneously finding that the father abandoned the child for child custody purposes. We therefore affirm the trial court's judgment.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*