NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11986

LILIANA MARIBEL RIVERA RECINOS  vs.  MARIA ISABEL RECINOS ESCOBAR.

Middlesex.     November 5, 2015. - March 4, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.

Probate Court, Jurisdiction, General equity power.
     Jurisdiction, Probate Court.


     Complaint in equity filed in the Middlesex Division of the Probate and Family Court Department on April 14, 2014.

     The case was heard by Patricia A. Gorman, J.

     The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


     Elizabeth Badger for the plaintiff.
     Mary K. Ryan, Cynthia M. Guizzetti, & Mara O'Malley, for American Immigration Lawyers Association & others, amici curiae, submitted a brief.


     SPINA, J.  In this case, we are asked to determine whether

the Probate and Family Court Department has jurisdiction over

youth between the ages of eighteen and twenty-one to make

special findings that are necessary to apply for special immigrant juvenile (SIJ) status under 8 U.S.C. § 1101(a)(27)(J) (2012). Congress created the SIJ classification to permit immigrant children who have been abused, neglected, or abandoned by one or both of their parents to apply for lawful permanent residence while remaining in the United States. See id.; 8 C.F.R. § 204.11 (2009). "[C]hild" under the Federal statute is defined as an unmarried person under the age of twenty-one. 8 U.S.C. § 1101(b)(1). Before an immigrant child can apply for SIJ status, she must receive the following predicate findings from a "juvenile court":[1] (1) she is dependent on the juvenile court; (2) her reunification with one or both parents is not viable due to abuse, neglect, or abandonment; and (3) it is not in her best interests to return to her country of origin. 8 U.S.C. § 1101(a)(27)(J)(i). Once these special findings are made, an application and supporting documents may be submitted to the United States Citizenship and Immigration Services (USCIS) agency.[2] An application for SIJ status must be submitted before the immigrant's twenty-first birthday. 8 C.F.R. § 204.11.

---

[1] As explained later in this opinion, a "juvenile court" includes the Probate and Family Court for purposes of the Federal statute.

[2] United States Citizenship and Immigration Services is the Federal agency responsible for lawful immigration to the United States.

Liliana Recinos, the plaintiff, was a twenty year old,[3] unmarried immigrant attempting to apply for SIJ status. She filed a complaint in equity in April, 2014, in the Middlesex County Division of the Probate and Family Court Department. The plaintiff requested equitable and declaratory relief in the form of a decree of special findings and rulings of law concerning the findings necessary to apply for SIJ status. She also filed various motions, including a motion for special findings. A pretrial conference was held in January, 2015, at which the plaintiff submitted a stipulation signed by both herself and her mother, the defendant.[4] In March, 2015, a judge in the Probate and Family Court dismissed the complaint, explaining that the plaintiff was over the age of eighteen and that, therefore, the court did not have jurisdiction over her. The plaintiff filed a timely notice of appeal. At the plaintiff's request, the Appeals Court stayed the proceedings so that she could pursue an asylum application; however, in late September, 2015, her asylum application remained unadjudicated. The plaintiff informed the Appeals Court that she would like to pursue her appeal as expeditiously as possible because her twenty-first birthday

---

[3] The plaintiff was twenty years old at the time of oral argument. She turned twenty-one on December 5, 2015.

[4] The parties stipulated that the defendant did not oppose an entry of the proposed decree and to facts included in the plaintiff's affidavit.

would occur on December 5, 2015.  We took this appeal on our own motion and expedited the proceedings to preserve the plaintiff's opportunity to apply for SIJ status.  This court heard oral arguments on November 5, 2015.

The primary issue raised by the plaintiff on appeal is whether the Probate and Family Court has jurisdiction pursuant to its broad equity powers under G. L. c. 215, § 6, over immigrant youth between the ages of eighteen and twenty-one to entertain a request to make the necessary predicate special findings under 8 U.S.C. § 1101(a)(27)(J).  On November 9, 2015, we issued the following order to the Middlesex County Division of the Probate and Family Court Department:

> "The judgment of the Probate and Family Court dated March 13, 2015, dismissing the plaintiff's complaint is reversed.  The Probate and Family Court has jurisdiction to entertain the plaintiff's case, and the plaintiff is dependent on the court for these purposes.  The court shall conduct proceedings forthwith on the plaintiff's complaint and shall act on her requests for relief expeditiously, such that, if the requested findings are made, she will have time to apply to the Federal authorities for special immigrant juvenile status before her twenty-first birthday on December 5, 2015.  This order will serve as the rescript of this court for purposes of Mass. R. A. P. 1 (c), and shall issue to the trial court immediately.  Opinion or opinions to follow.  By the Court."

This opinion states the reasons for that order.[5]

---

[5] We acknowledge the amicus brief submitted by the New England Chapter of the American Immigration Lawyers Association and twenty-four others who are legal services providers, professional associations, and attorneys who advocate and

1.  <u>Facts</u>.  The plaintiff was born on December 5, 1994, in El Salvador.  In her complaint and affidavit, the plaintiff chronicles a childhood riddled with instances of physical and emotional abuse by her father.  She also described her mother's failure to protect her and her siblings from their father's abuse and the chronic gang violence in their neighborhood.  She came to the United States in 2012, at the age of seventeen, to escape the threats from her father and the gang violence that overwhelmed her neighborhood.[6]  At first, she settled in the area of Baltimore, Maryland, with her brother.  While residing in Maryland, she was assigned a volunteer attorney.  For unexplained reasons, the attorney did not take any action in helping the plaintiff obtain the findings she now seeks from the Probate and Family Court.  At the end of 2012, the plaintiff relocated to Massachusetts and moved in with a family friend with whom she still currently lives.  While living in the United States, the plaintiff has had two children.  Preliminarily, the plaintiff and her experiences seem to be of the type contemplated by the Federal statute.

2. <u>Special immigrant juvenile status</u>.  In 1990, Congress amended the Immigration and Nationality Act (INA) to include the

represent immigrant youth in removal proceedings in various courts.

[6] The plaintiff's father died on June 25, 2013.

SIJ classification to create a pathway to citizenship for immigrant children. Pub. L. 101-649, § 153, 101st Cong., 2d Sess. (1990). When the SIJ classification was first included, the statute required a State court to issue an order finding that (1) the child was dependent on a juvenile court and was eligible for long-term foster care, and (2) it was not in the child's best interests to return to his or her country of origin. Id. Since then, the provision of the INA concerning SIJs has been amended several times. Matter of Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 107-108 (N.Y. 2013) (Marcelina M.-G.) (explaining various amendments to INA concerning SIJ status). In 1997, Congress modified the definition of SIJ to include a child who was "legally committed to, or placed under the custody of, an agency or department of a State" and added the requirement that eligibility for long-term foster care be "due to abuse, neglect, or abandonment." Pub. L. 105-119, § 113, 111 Stat. 2440 (1997). In 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA) further amended the INA to expand eligibility for SIJ status to include immigrant children who were placed in the custody of an "individual or entity appointed by a State or juvenile court" and eliminated the requirement of long-term foster care eligibility. Pub. L. 110-457, § 235(d)(1), 122 Stat. 5044 (2008). The amendment added the requirement that the

reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law. Id. In its present form, the Federal statute requires a juvenile court to issue an order finding that (1) the immigrant child is dependent on a juvenile court, or placed in the custody of a department or agency of the State, or placed in the custody of an individual or entity appointed by the State or court; (2) the immigrant child cannot be reunified with one or both of his or her parents due to abuse, neglect, or abandonment, or other similar basis under State law; and (3) it would not be in the child's best interests to return to his or her parents' previous country of nationality or country of last habitual residence. 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).

The Federal statute requires a juvenile court to make special findings before an immigrant youth can apply for SIJ status and lawful permanent residence. Id. The State and Federal proceedings are distinct from each other. "The process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of state and federal systems.'" H.S.P. v. J.K., 223 N.J. 196, 209 (2015), quoting Matter of Marisol N.H., 115 A.D.3d 185, 188 (N.Y. 2013). Pursuant to 8 C.F.R. § 204.11, "[j]uvenile court" is defined as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of

juveniles."[7] When determining which court qualifies as a juvenile court under the Federal statute, it is the function of the State court and not the designation that is determinative. R.G. Settlage, E.A. Campbell, V.T. Thronson, Immigration Relief: Legal Assistance for Noncitizen Crime Victims 70 (2014) (Settlage). In Massachusetts, the Juvenile Court and the Probate and Family Court both have jurisdiction to make judicial determinations about the care and custody of juveniles despite only one court being designated as a juvenile court. See G. L. c. 119, § 1; G. L. c. 208, §§ 19, 28, 28A, 31, 31A. Therefore, in Massachusetts, an immigrant child may petition for special findings in either the Juvenile Court or the Probate and Family Court. Because of the distinct expertise State courts possess in the area of child welfare and abuse, Congress has entrusted them with the responsibility to perform a best interest analysis and to make factual determinations about child welfare for purposes of SIJ eligibility. See H.S.P., supra at 211; Matter of Hei Ting C., 109 A.D.3d 100, 104 (N.Y. 2013). Therefore, the special findings a juvenile court makes should be limited to

---

[7] The Federal regulations have not been updated to reflect the amendments to the special immigrant juvenile (SIJ) statute by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110-457, § 235(d)(1), 122 Stat. 5044 (TVPRA). See 76 Fed. Reg. 54,978 (2011), to be codified at 8 C.F.R. parts 204, 205, and 245. See also Matter of Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 109 n.3 (N.Y. 2013).

child welfare determinations. Immigration is exclusively a Federal power. See In re Y.M., 207 Cal. App. 4th 892, 908 (2012). It is not the juvenile court's role to engage in an immigration analysis or decision. Settlage, supra at 72. Special findings by a State court that determine that the child meets the eligibility requirements for SIJ status are not a final determination. See Marcelina M.-G., 112 A.D.3d at 109. It is only the first step in the process to achieve SIJ status. Id. Once the child obtains the required special findings from a qualifying State court, the child may file an application with USCIS. This application must be submitted before the child's twenty-first birthday. 8 C.F.R. § 204.11. The child will not "age-out" of SIJ status on account of turning twenty-one while his or her application is under consideration with USCIS. See TVPRA, Pub. L. 110-457, § 235(d)(6), 122 Stat. 5044. An application for SIJ status consists of a variety of forms, and a certified copy of the juvenile court order must be included. See SIJ: Forms You May Need, http://www.uscis.gov/green-card/special-immigrant-juveniles/sij-forms-you-may-need [http://perma.cc/H8TV-UTWH]. In order to provide USCIS with sufficient information concerning the applicant's eligibility for SIJ status, State courts should provide sufficient detail about how they came to their conclusions in their order of special findings. H.S.P., 223 N.J. at 213-214. An applicant

should include the supporting evidence used in the State court proceeding to aid USCIS in its decision-making process. See SIJ: Forms You May Need, supra. Doing so may result in a quicker decision. See id. Once a child has filed the necessary paperwork, an interview between the applicant and a USCIS official will be conducted. See SIJ: After You File, http://www.uscis.gov/green-card/special-immigrant-juveniles/sij-after-you-file [http://perma.cc/4H77-YF3K]. A decision will be issued within 180 days from the official filing date. See id. See also 8 C.F.R. § 204.11.

3. Jurisdiction. The Probate and Family Court judge dismissed the complaint for lack of jurisdiction because the plaintiff was over the age of eighteen. We conclude that the Probate and Family Court has jurisdiction, under its broad equity power, over youth between the ages of eighteen and twenty-one for the specific purpose of making the special findings necessary to apply for SIJ status pursuant to the INA.

In most circumstances, the Probate and Family Court has jurisdiction over children who are under the age of eighteen. See generally G. L. cc. 119, 190B, 210. The portion of the INA concerning SIJ status provides relief for immigrant children until age twenty-one, consequently creating a gap between access to our State court and the Federal statutory relief. There are some instances where the Probate and Family Court has

jurisdiction over "adult children," namely, individuals between the ages of eighteen and twenty-three. See G. L. c. 208, § 28. However, these instances involve the maintenance and support of children and are not applicable to the present case. See id. See also Eccleston v. Bankosky, 438 Mass. 428, 434-435 (2003) (explaining expansion of jurisdiction over "adult children" in matters of maintenance and support). This gap is not unique to the Commonwealth. Many States have a jurisdictional age limit of eighteen for access to their juvenile courts. In response to this gap, some States have enacted legislation to extend the juvenile court's jurisdiction to children up to the age of twenty-one for certain proceedings.[8] Massachusetts has not yet passed legislation to extend the Probate and Family Court's

---

[8] For example, the Maryland Legislature amended a statute concerning the jurisdiction of that State's equity courts to include "custody or guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings" within the equity court's jurisdiction. Md. Code Ann., Fam. Law § 1-201 (LexisNexis 2012). Under the subsection, "child" is defined as an unmarried individual under the age of twenty-one. Id. The New York Legislature passed a similar amendment to address this gap. The statute governing guardianship proceedings was amended to extend jurisdiction over an individual "who is less than twenty-one years old who consents to the appointment or continuation of a guardian after the age of eighteen." N.Y. Jud. Ct. Acts Law § 661(a) (McKinney 2008). Previously, that statute was only applicable to children under the age of eighteen. Matter of Trudy-Ann W. v. Joan W., 73 A.D.3d 793, 794 (N.Y. 2010).

jurisdiction over these individuals.[9]  The Probate and Family Court does, however, have broad equity powers pursuant to G. L. c. 215, § 6, and the court may invoke its equity power to fill in this gap.

General Laws c. 215, § 6, grants the Probate and Family Court equitable jurisdiction, stating in relevant part:

> "The probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . . ."

"A court with equity jurisdiction has broad and flexible powers to fashion remedies."  Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1), 424 Mass. 430, 463 (1997).  "These powers are broad and flexible, and extend to actions necessary to afford any relief in the best interests of a person under their jurisdiction."  Matter of Moe, 385 Mass. 555, 561 (1982).  We turn our attention to general principles of equity.

---

[9] Although legislation has not been enacted in Massachusetts, there has been pending legislation attempting to bridge the gap between our State courts and the Federal statute. A House bill would confer jurisdiction over persons between the ages of eighteen and twenty-one seeking findings in order to apply for SIJ status.  2015 House Doc. No. 1418.  The bill also defines the term "dependent on the court" to mean "subject to the jurisdiction of the court for the findings, orders, and referrals enumerated in this section but shall not constitute a finding of legal incompetence."  Id.

A fundamental maxim of general equity jurisprudence is that equity will not suffer a wrong to be without a remedy.  2 J.N. Pomeroy, Equity Jurisprudence § 363 (5th ed. 1941).  In this case, the wrong is the abuse, neglect, or abandonment immigrant children under the age of twenty-one suffer as a result of one or both of their parents' actions.  As a policy, the Commonwealth seeks to protect children from wrongs that result "from the absence, inability, inadequacy or destructive behavior of parents."  G. L. c. 119, § 1.  The wrongs from which this policy seeks to protect the Commonwealth's children are the same as the wrongs that SIJ status attempts to remedy.  Congress created this remedy by amending the INA to create a pathway to citizenship for immigrant children under the age of twenty-one who have suffered abuse, neglect, or abandonment by one or both of their parents.  In order to obtain this remedy, a State court must make the necessary findings before the immigrant youth can apply for SIJ status.  According to general principles of equity, if the Probate and Family Court does not exercise jurisdiction over the plaintiff, she, as well as any other immigrant child between the ages of eighteen and twenty-one in the Commonwealth, will have suffered a wrong with no available remedy.  Such claims fall within the general principles of equity, and therefore, the Probate and Family Court may, for purposes of the Federal statute, exercise jurisdiction over

immigrant children up to the age of twenty-one who claim to have been abused, abandoned, or neglected.

This is not the first time this court has said that the general equity powers of the Probate and Family Court reach children who are over the age of eighteen.  In Eccleston, 438 Mass. at 438, we concluded that the Probate and Family Court's equity jurisdiction extended to adult children until the age of twenty-three, even in the absence of statutory authority.  Similar to the plaintiff in this case, the postminority child in Eccleston, due to her unfit parents, was financially dependent on an adult and needed a remedy from the Probate and Family Court to aid her in her path to self-sufficiency.  Id. at 437.  Despite the absence of specific relief under any statute, we recognized that the Probate and Family Court had equitable powers to provide a remedy for the postminority child.  Id. at 437-438.  As there is also no specific relief afforded by statute in this case, the Probate and Family Court may invoke its broad equity power under G. L. c. 215, § 6, to provide relief to the plaintiff in the form of special findings necessary for her to make application for SIJ status.

The plaintiff also argues that the Probate and Family Court has jurisdiction to enter declaratory relief under G. L. c. 231A, § 9, and that it is an appropriate method to enter the special findings for SIJ status.  We need not decide this

question in light of our conclusion that relief is available under the general equity jurisdiction of the Probate and Family Court.

4.  Dependency.  The plaintiff argues that she is dependent on the Probate and Family Court by virtue of the Federal statute.  During the pretrial conference, a Probate and Family Court judge equated exercising jurisdiction over the plaintiff with a custody determination.  The plaintiff contends that the Federal statute does not limit the dependency requirement to a custody determination.  We agree.

One of the three findings that a judge in the juvenile court must make includes either a custody determination or a declaration that the child is dependent on a juvenile court.  Specifically, the child must be

> "an immigrant who is present in the United States . . . who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States" (emphasis added).

8 U.S.C. § 1101(a)(27)(J)(i).  The presence of the word "or" within the subsection indicates that there are three separate and distinct alternatives by which a child may satisfy this particular eligibility requirement.  It follows, then, that the subsection must extend beyond a sole custody determination to satisfy the language of the Federal statute.  If the word

"dependent" was to be equated with custody, the first part of the subsection would be mere surplusage. "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." 2A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 46.6 (7th ed. rev. 2014). "A statute should be construed so as to give effect to each word, and no word shall be regarded as surplusage." Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412 (2009). The word "dependent" must mean something other than custody and should be broadly construed because of the beneficent and remedial purpose behind the Federal statute.

The question now is whether the plaintiff can be considered "dependent" on the Probate and Family Court. The Commonwealth's policy is to ensure "that the children of the commonwealth are protected against the harmful effects resulting from the absence, inability, inadequacy or destructive behavior of parents or parent substitutes."[10] G. L. c. 119, § 1. We have often recognized that attaining the age of majority does not necessarily mean that one is self-sufficient. See, e.g., Eccleston, 438 Mass. at 436. The plaintiff here, who was age twenty at the time of oral argument in this appeal, was not

---

[10] In States that define the word "dependent" by statute, the term is commonly defined as a child who has been abused, abandoned, or neglected. See Cal. Welf. & Inst. Code § 300 (West 2015); Fla. Stat. § 39.01 (2015).

necessarily self-sufficient. In order to attain self-sufficiency, the plaintiff and other youth in her situation need the assistance of the Probate and Family Court in the form of special findings applicable to SIJ status. If an immigrant child is able to show, for purposes of SIJ status eligibility, that he or she experienced abuse, neglect, or abandonment by one or both parents, it follows that the child is dependent on the Probate and Family Court for the opportunity to obtain relief. The child would be "dependent" on the Probate and Family Court for the assistance that is available in applying successfully for the Federal relief, i.e., SIJ status.

5. <u>Conclusion</u>. For the foregoing reasons, on November 9, 2015, we issued an order reversing the dismissal of the plaintiff's complaint and remanding the matter to the Probate and Family Court for further proceedings consistent with that order. The Probate and Family Court has jurisdiction over the plaintiff, and the plaintiff is deemed dependent on the Probate and Family Court for purposes of 8 U.S.C. § 1101(a)(27)(J). We express no view as to what the other predicate findings should be.

CORDY, J. (concurring, with whom Lenk, J., joins).  I concur in the court's conclusion that in this case the Probate and Family Court may undertake to make findings necessary to enable the plaintiff to apply for special immigrant status under 8 U.S.C. § 1101(a)(27)(J) (2012).  I do so because of our strong State policies aimed at protecting children from the effects of abuse and neglect, and the apparent gap between the ordinary jurisdiction of the Probate and Family Court and the benefits available under Federal law for immigrant children (between the ages of eighteen and twenty-one) who can establish that they have been abused, neglected, or abandoned by one or both of their parents in their native countries.  I do so reluctantly, however, because this opinion stretches our equity jurisprudence to its outer edge, beyond what the court majority concluded was appropriate in Eccleston v. Bankosky, 438 Mass. 428 (2003), a markedly different case.[1]

---

[1] In Eccleston v. Bankosky, 438 Mass. 428, 431-433 (2003), the Probate and Family Court had placed the child in the custody of the Department of Social Services at the age of eleven because of the unfitness of her parents, subsequently appointed a guardian with whom the child lived, and ordered her father to pay support. Id. at 431-433.  The question was whether the father could be ordered to continue to provide support for the child after she attained the age of eighteen and continued to live with her guardian, where she could not live with either parent because of abuse, yet had no means of support and was plainly "unemancipated."  Id. at 428-429, 432.  This court concluded that where a comprehensive State legislative scheme provided for postminority support of a child who was unemancipated and who lived with one of her parents, the Probate

In my view, it would have been far preferable if the Legislature had, as other State Legislatures have, acted on legislation that would have explicitly provided for expanded State court jurisdiction to address claims like that of the plaintiff. Without such legislation, the court is left to engage in gymnastics of logic and circular reasoning to conclude that the plaintiff is "dependent" on the court solely because she needs the court to declare that she is "dependent" on the court in order to meet one of the requirements of the Federal statute, and in no other respect.

---

and Family Court could use its equitable powers in order to "close an unintended gap" in the scheme and provide for similar support for unemancipated children of families disrupted by abuse such as the one in that case. Id. at 437. Here, the plaintiff was not the subject of court proceedings while she was properly within its jurisdiction and is not seeking a guardian or order of support, and the gap is between the State courts' jurisdictional limits and Federal immigration law.