OPINION OF THE COURT BY JUSTICE D. LAMBERT
The Cabinet for Health and Family Services (hereinafter Cabinet) seeks reversal of the Court of Appeals, which held that the Campbell Family Court erred in declining to conduct a Special Immigrant Juvenile (hereinafter SIJ) hearing at the disposition phase of a dependency, neglect and abuse case regarding N.M.D.J. (hereafter N.), an unaccompanied Guatemalan child. After thorough review, we reverse the Court of Appeals.
I. Facts
N. was born in Guatemala in 2001 and will turn eighteen in July 2019. She is now the mother of two infant children, having one child born in 2017 in Arizona and one child born in 2018 in Kentucky. Only N.'s case is before us. It is believed that her biological parents remain in Guatemala. They did not participate directly in the dependency case filed below but were appointed counsel. N. was also appointed counsel but neither her counsel, nor the counsel for the parents have participated in the appellate process. N.B.D. is the mother of N.'s boyfriend (M.). M. is likewise a minor and the father of N.'s two children.
N.B.D., an adult resident of Newport, Kentucky, filed a dependency petition in the Campbell County Family Court (the petition was signed June 20, 2017, but not filed until August 16, 2017) alleging the following:
N. is an unaccompanied minor from Guatemala who is in removal proceedings with DHS[1] . She was released to her cousin's custody. The cousin lives out of state. N. had a child on January 24, 2017. Her cousin made her pay for *75 everything for her and the child. My son, M., is the father of the child. N. could not pay to live with her cousin and she came here to live with me and my son. She is afraid to return to Guatemala. She and M. were on vacation in Mexico when they were kidnapped. The kidnappers held them in a house. There was a lot of blood in the house. I paid $3000 for their release. When they released them, they put covers on their heads and took them to the U.S. border and told them not to return to Guatemala. They had both M. and N.'s (Petition ends abruptly at this point).
As N.B.D. requested, temporary custody of N. was placed with her at the first court appearance. The Court also ordered the Cabinet to become involved to offer services to N. After a couple of pretrial appearances, an adjudication hearing was set for December 20, 2017. At the end of the adjudication hearing, the court found that the child was dependent as there was no legal custodian present and set the disposition hearing for January 31, 2018. Meanwhile, N. gave birth to her second child on January 4, 2018. Two days prior to the disposition hearing, N.B.D.'s counsel filed a motion to continue the case, incorrectly alleging that the newborn was premature and that the child remained in the hospital. Counsel also stated that two experts had been retained to testify about the dangers to N. if she returned to Guatemala; and that additional time was needed by counsel to permit the experts to interview N. and "form an opinion." The Cabinet objected to a continuance and the Court overruled the motion, conducted the dispositional hearing, and adopted the recommendations of the Cabinet to continue custody of N. with N.B.D.
In addition to completing the standard form order and docket sheet, Judge Woeste entered a separate five-page order addressing his findings in more detail, including the fact that U.S. immigration authorities had detained both N. and M. in Arizona, and had temporarily placed them with a cousin in Arizona pending the immigration proceedings. He noted that N. and M. subsequently ran from that federal immigration placement to the home of N.B.D. The Court also noted that N. had testified that she had come from Guatemala with M. and while they were traveling through Mexico, they were kidnapped by a gang.
The Court then addressed the motion for a continuance, the request for the SIJ special findings, and the limits of its own jurisdiction to make SIJ findings. The Court overruled the motion for a continuance because it was the Court's opinion that the testimony of experts regarding N.'s home country would not be relevant as the child was to stay in Kentucky in the custody of N.B.D., and therefore it was without the jurisdictional authority to undertake SIJ findings because such findings were not relevant to the core dependency, neglect, and abuse issues before the court.
II. Special Immigrant Juvenile Status under 8 U.S.C. Section 1101 (a)(27)(J) and the Role of State Courts
In de Rubio v. Rubio Herrera, 541 S.W.3d 564 (Mo. Ct. App. 2017), the Missouri Court of Appeals addressed the jurisdiction of Missouri courts to make SIJ findings in a dissolution case where the parents were both citizens of El Salvador and the custody of the child was granted solely to the mother. The mother wanted the court to enter an order that it would not be in the child's best interest to return to his home country with the father. Id. at 568-69. The de Rubio Court discussed the statute, saying:
The federal Immigration and Nationality Act provides a path for undocumented immigrant children who have been *76 abused, neglected, or abandoned to gain lawful permanent residency in the United States by obtaining Special Immigrant Juvenile status. In re Guardianship of Guaman, 879 N.W.2d 668, 671-72 (Minn. App. 2016) (citing 8 U.S.C. § 1101(a)(27)(J) ; 8 CFR § 204.11 ). A child who obtains such status may become a naturalized United States citizen after five years. Eddie E. v. Superior Court, 234 Cal. App. 4th 319, 326, 183 Cal.Rptr.3d 773 (Cal. App. 2015).
This process was established in 1990, when Congress amended the Act to include the definition of "Special Immigrant Juvenile" ("SIJ") in 8 U.S.C. § 1101(a)(27)(J). Recinos v. Escobar, 473 Mass. 734, 46 N.E.3d 60, 63 (2016). The 1990 definition required (1) a finding by a state court that the child is "dependent on a juvenile court" and eligible for long-term foster care, and (2) a finding that it is "not in the child's best interests to return to his or her country of origin." Id. at 64. In 1997, Congress modified the definition to include a child who had been "legally committed to, or placed under the custody of, an agency or department of a State" and required that eligibility for long-term foster care be "due to abuse, neglect, or abandonment." Id.
Id. at 569-70 (footnotes omitted).
On appeal, the mother argued the circuit court erred by not making the findings required for SIJ status. Id. at 571. The Court found no error based on the fact that Missouri does not have a statute or legal precedent requiring a court to issue special findings of fact to qualify a juvenile for SIJ status. Id. at 571-72. Nor does the federal statute itself require a state to make those findings. Id. at 571. The Court acknowledged that a court is permitted to make those findings, but the obligation to do so arises solely from a court's duty to act in the child's best interest. Id. at 573. Ultimately, the court held:
Our reading of the SIJ statute is in accordance with the analysis in [ Canales v. Torres Orellana, 67 Va.App. 759, 800 S.E.2d 208 (2017) ], which is consistent with the idea that federal law cannot mandate a state court to make findings but may rely on state courts in the proper circumstances to make such findings that are in a child's best interest and required of the court while in the position of in loco parentis.
Id. (emphasis added).
The case cited by the de Rubio opinion, Canales v. Torres Orellana, 67 Va.App. 759, 800 S.E.2d 208 (2017), came to the same well-reasoned conclusion. In Canales , mother and father were both Honduran. Id. at 212. When the child was two, the mother immigrated to the United States and left the child in the care of the child's grandmother in Honduras. Id. Nine years after immigrating, when the child was in the United States, the mother petitioned the juvenile court to grant her sole custody and make specific factual findings that the child had been "abused" and "abandoned" by the child's father, as those are the terms used in the SIJ statute. Id. 212-13. The father at all times lived in Honduras and his whereabouts were unknown. Id. The juvenile court granted sole custody to the mother but declined to make the specific SIJ findings. Id. The mother then appealed to the Circuit Court. Id. The Circuit Court also granted the mother sole custody, but declined to make the specific SIJ findings, believing it "did not have jurisdiction to make findings as to [SIJ] petitions[,] such authority is not set forth in the Code of Virginia." Id.
The Virginia Court of Appeals agreed with the circuit court, holding:
the SIJ statute does not request, much less order, state courts to make specific, *77 separate SIJ findings; rather, it allows the appropriate federal entities to consider a state court's findings of fact, as recorded in a judgment order rendered under state law, when determining whether an immigrant meets the SIJ criteria. In other words, the SIJ definition only lists certain factors which, if established in state court proceedings, permit a juvenile immigrant to petition the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security for SIJ status- 8 U.S.C. § 1101(a)(27)(J) does not require that the state court make such findings or convey jurisdiction upon them to do so.
Id. at 217.
In this case, N.B.D. requested the extra finding by the trial court to start the process of qualifying the child for Special Immigrant Juvenile status under 8 U.S.C Section 1101(a)(27)(J).
Under the Immigration and Naturalization Act, a "special immigrant" juvenile is defined as follows:
(27) The term "special immigrant" means-
[...]
(J) an immigrant who is present in the United States-
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States,
and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that-
(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter;
8 U.S.C. § 1101 (a)(27)(J).
Nothing contained in the Immigration and Nationality Act directs a state court to take any additional steps beyond carrying out their duties under state law. In fact, the United States Citizenship and Immigration Services ("USCIS") Policy Manual states as follows:
USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide, which means that the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit. The court ordered dependency or custodial placement of the child is the relief being sought from the juvenile court.
USCIS Policy Manual, Vol. 6, Part J, ch. 2 (D)(5), 2017 WL 443003 (footnote omitted).
*78 The Policy Manual also recognizes that the federal law does not specifically direct the states to undertake a SIJ classification hearing. "There is nothing in the USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law." USCIS Policy Manual, Vol. 6, Part J, ch.2 (D)(4), 2017 WL 443003. Rather the Manual directs state courts only to follow state laws as to when to exercise their authority, and to use their own evidentiary rules and due process guidelines in deciding whether to undertake a SIJ review. USCIS Policy Manual, Vol 6, Part J, ch. 3(A)(2), 2017 WL 443004.
III. Jurisdiction of Kentucky Courts in Dependency, Neglect and Abuse Cases
Here, N. met the first of the dependency and placement requirements, but the Court found that it did not have the authority under state statutes to make the requested additional SIJ findings. The Family Court has jurisdiction via KRS [2] 23A.100(2)(c) and KRS 620[3] to handle dependency, neglect and abuse actions and to make findings as to the best interest of the child. Clearly, N., as an unaccompanied minor child, whose parents are believed to be residents of Guatemala, is a dependent child and is entitled to the protection and care of the Commonwealth of Kentucky via KRS Chapter 23A.100. The ultimate question presented here is whether the Family Court must make additional findings relevant to the child's SIJ classification, upon request, in every such case. We hold that the courts of Kentucky are not required to make additional findings related to SIJ classification unless the court first determines that the evidence to be gleaned from such a supplemental hearing is relevant to the child's best interests. We agree with the family courts' assessment of the jurisdictional statutes and agree that our General Assembly has not specifically directed Kentucky's courts to make SIJ findings.[4] Some state courts have held that their jurisdiction was sufficient without the legislature enacting more specific statutes addressing SIJ classification findings.[5]
*79 We agree with the findings of Judge Woeste that "[s]uch a hearing is unnecessary where the Court has found that the child is dependent and that the present custodial arrangements are appropriate to serve the best interests of the child." However, we hold that under proper circumstances, where such a placement of the child back into the country where he or she was abused, neglected or abandoned is being considered by the state court, the courts of Kentucky are empowered under KRS 620.023 and other statutes which grant authority to determine custody or placement of a child, to make additional findings to determine whether it would be in the child's best interest to return to his or her native country. In this case, where N.B.D. acknowledges in her initial petition that N. was "in removal proceedings with DHS" and the child's testimony confirms that she and M. ran from the Arizona home where they had been placed by immigration authorities, there are also grave concerns about the use of the juvenile process by N.B.D. to circumvent federal immigration law. The Supremacy Clause of the U.S. Constitution prohibits states from resolving immigration hearings.[6] Rather, the proper place for such expert evidence in this case is not in any state court, but in federal immigration court.
For the foregoing reasons, we reverse the Court of Appeals.
All sitting. Buckingham, Keller, Lambert, and Wright, JJ., all concur. VanMeter, JJ., concurs in result only. Minton, C.J., dissent by separate opinion in which Hughes, J., joins.

Department of Homeland Security.

Kentucky Revised Statutes.

620.023 Evidence to be considered in determining the best interest of a child. (1) Evidence of the following circumstances if relevant shall be considered by the court in all proceedings conducted pursuant to KRS Chapter 620 in which the court is required to render decisions in the best interest of the child: (a) Mental illness as defined in KRS 202A.011 or an intellectual disability as defined in KRS 202B.010 of the parent, as attested to by a qualified mental health professional, which renders the parent unable to care for the immediate and ongoing needs of the child; (b) Acts of abuse or neglect as defined in KRS 600.020 toward any child; (c) Alcohol and other drug abuse, as defined in KRS 222.005, that results in an incapacity by the parent or caretaker to provide essential care and protection for the child; (d) A finding of domestic violence and abuse as defined in KRS 403.720, whether or not committed in the presence of the child; (e) Any other crime committed by a parent which results in the death or permanent physical or mental disability of a member of that parent's family or household; and (f) The existence of any guardianship or conservatorship of the parent pursuant to a determination of disability or partial disability as made under KRS 387.500 to 387.770 and 387.990. (2) In determining the best interest of the child, the court may consider the effectiveness of rehabilitative efforts made by the parent or caretaker intended to address circumstances in this section.

Some state legislatures have amended their statutes to direct courts to make SIJ determinations. See, e.g. , Fla. Stat. Ann. Section 39.5075(4) (West 2005), Md. Code Ann. Fam. Law, Section 1-201(a) and (b)(1), and N.Y. Fam. Ct. Act Section 661(a).

See, e.g. , Matter of Guardianship of Luis, 114 N.E.3d 855 (Ind. Ct. App. 2018) ; Guardianship of Penate, 477 Mass. 268, 76 N.E.3d 960 (2017) ; Florida Dep't of Children and Families, 215 So. 3d 1219 (Fla. 2017) ; In re Guardianship of Guaman, 879 N.W.2d 668 (Minn. Ct. App. 2016) ; H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849 (2015) ; and In the interest of J.J.X.C., 318 Ga.App. 420, 734 S.E.2d 120 (2012).

U.S. Const. art. VI, cl. 2.