MINTON, C.J., DISSENTING:
I agree with the majority's recognition that Kentucky courts have jurisdiction to make Special Immigrant Juvenile Status ("SIJS") findings. But I must respectfully dissent from the majority's holding that our trial courts are not required to engage in SIJS factfinding. I fear the majority signals a reluctance on the part of our state courts in Kentucky to engage fully in the collaborative process established by federal law to protect the welfare of undocumented immigrant children. And this holding, in my view, subverts the overarching duty of our courts to guard the best interests of all children who come before us.
The United States Supreme Court "has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures. Federal and state law 'together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.' "[7]
The jurisdictions identified by the majority that require their state courts to engage in SIJS factfinding whenever an undocumented immigrant child is before them in a dependency, neglect, and abuse ("DNA") action, even in the absence of a state statutory mandate to do so, recognize the collaborative responsibility of their state courts to engage in SIJS factfinding.[8]
*80 Federal law leaves to state courts the responsibility of deciding family law matters: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."[9] Recognizing the proficiency of state courts' handling of family law issues, while at the same time recognizing the proficiency of federal authorities' handling of immigrant issues, the federal government, in furtherance of the idea of cooperative federalism, has entrusted to state courts the duty to make certain preliminary findings that bear on an undocumented immigrant child's ability to seek custody in the care of an individual or entity in the United States.
As the majority recognizes, the federal government has charged, but not mandated, state courts with making certain findings pertaining to an undocumented immigrant child's SIJS. "Only once a state juvenile court has issued [the requisite] factual predicate order may the child, or someone acting on his or her behalf, petition the [USCIS] for SIJS."[10] "The process for obtaining SIJ status is 'a unique hybrid procedure that directs the collaboration of state and federal systems.' "[11] As the Court of Appeals noted in the case at hand, without the requisite SIJS findings by a Kentucky court, undocumented immigrant children in Kentucky will be unable to proceed with an application for SIJS and may possibly face deportation. It is not an exaggeration to say that that child's "immigration status hangs in the balance."[12]
The requisite factual predicate to obtain SIJS is contained in 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. 204.11. The statute, 8 U.S.C. § 1101(a)(27)(J), states the following, in relevant part:
The term "special immigrant" means an immigrant who is present in the United States-
(i) Who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, *81 or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [and]
(ii) For whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]
8 C.F.R. § 204.11 states the following, in relevant part:
An alien is eligible for classification as a special immigrant ... if the alien: ...
(1) [i]s under twenty-one ...;
(2) [i]s unmarried;
(3) [h]as been declared dependent upon a juvenile court ... in accordance with state law governing such declarations of dependency ...;
(4) [h]as been deemed eligible by the juvenile court for long-term foster care;
(5) continues to be dependent upon the juvenile court and eligible for long-term foster care ...; and
(6) [h]as been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents[.]"
"[']Juvenile court['] means a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles[.]"[13] In Kentucky, those courts are the circuit family courts or the juvenile session of the district court in circuits where there is no family court division of circuit court.
Under KRS 620.023(1), in a DNA action, "the court is required to render decisions in the best interest of the child[.]" The "best interest of the child" standard is the hallmark of Kentucky family law decision making, and Kentucky's courts have a responsibility to dispose of a case according to the "best interest of the child."
When an undocumented immigrant child appears before a Kentucky court of competent jurisdiction in a DNA action, there are essentially three potential scenarios that could occur: 1) the court engages in SIJS factfinding, determining that it is not in the child's best interests to be returned to the custody of his or her parents or native homeland; 2) the court engages in SIJS factfinding, determining that it is in the child's best interests to be returned to the custody of his or her parents or native homeland; or 3) the court does not engage in SIJS factfinding at all, disposing of the case as it sees fit.
In the first suggested scenario, the trial court engages in SIJS fact finding, determining that it is not in the child's best interests to be returned to the custody of his or her parents or native homeland. The trial court's only real option is to place the child in the custody of an individual or entity within the United States. And, because the trial court has engaged in explicit SIJS factfinding, it has ensured that the child can petition the federal government for SIJS without which the child would be subject to deportation. Deportation is-under this scenario-the exact situation that the trial court explicitly found would *82 not be in the child's best interests. The trial court has fulfilled its duty to dispose of the child's case according to that child's best interest.
In the second scenario, the trial court engages in SIJS factfinding, determining that it is in the child's best interest to be returned to the custody of his or her parents or native homeland. Although the trial court has determined that deportation is in the child's best interest, only the federal government has the power to ensure that deportation occurs. In this manner, the trial court has nevertheless fulfilled its responsibility to dispose of the case according to the child's best interest because it has supplied the federal government with the information it needs to deport the child, the exact situation that the trial court has determined would be in the child's best interest.
A variation of the final scenario is the one presented to this Court in the case at hand. Here, as the majority notes, the trial court "found that the child is dependent and that the present custodial arrangements are appropriate to serve the best interests of the child," the "present custodial arrangements" being the placement of the child in the custody of the child's boyfriend's mother here in Kentucky. Because the trial court concluded in this way, the trial court found engaging in SIJS factfinding to be "unnecessary."
But without the requisite SIJS factfinding that the trial court refused to engage in, this child cannot petition the federal government for SIJS to prevent deportation. This result is contrary to the trial court's conclusion that "the present custodial arrangement[ ]," i.e. custody in the hands of an individual in the U.S., is in the child's best interest. It is impossible for the trial court to assuredly say that it fulfilled its duty to dispose of the case in furtherance of the child's best interest because the family court not only allowed but created the risk of a different outcome for this child-deportation. And that outcome is directly contrary to the trial court's finding that placement of the child in the care of an individual or entity within the U.S. is in the child's best interest.
To ensure compliance with the judiciary's duty to dispose of juvenile cases according to the child's best interest and to ensure that Kentucky does not shirk its duty in cooperative federalism, I would require Kentucky's courts always to engage in SIJS factfinding when an undocumented immigrant child is before the court in an action involving a custodial arrangement. I would affirm the Court of Appeals and remand this case to the trial court with instructions to engage in SIJS factfinding.
Hughes, J. joins.
Attachment
ORDER CORRECTING
The Opinion of the Court by Justice Lambert rendered June 13, 2019 is corrected and the attached opinion is hereby substituted in lieu of the original opinion. Said correction does not affect the holding of the original opinion rendered by the Court.
ENTERED: July 9, 2019.
/s/ John D. Minton, Jr.
Chief Justice

Haywood v. Drown, 556 U.S. 729, 734-35, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (quoting Claflin v. Houseman, 93 U.S. 130, 136-37, 23 L.Ed. 833 (1876) ).

See, e.g., H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849, 852 (2015) ("[Family courts] play[ ] a critical role in a minor immigrant's attempt to obtain SIJ status[.] ... The [family court's] role in the SIJ process is ... to apply its expertise in family and child welfare matters to the issues raised in 8 C.F.R. § 204.11 [.] ... This approach will provide USCIS with sufficient information to enable it to determine whether SIJ status should be granted or denied[.]"); In re Guardianship of Guaman, 879 N.W.2d 668, 671 (Minn. App. 2016) ("Congress charged state courts with making SIJ findings because it 'recogniz[ed] that juvenile courts have particularized training and expertise in the area of child welfare and abuse, which places them in the best position to make determinations on the best interests of the child and potential or family reunification.' ") (quoting In re Hei Ting C., 109 A.D.3d 100, 969 N.Y.S.2d 150 (N.Y. 2013) ); Guardianship of Penate, 477 Mass. 268, 76 N.E.3d 960, 966 (2017) ("Congress delegated [SIJS factfinding] to State courts because it recognized 'the distinct expertise State courts possess in the area of child welfare and abuse,' which makes them best equipped to shoulder 'the responsibility to perform a best interest analysis and to make factual determinations about child welfare for purposes of SIJ eligibility." ') (quoting Recinos v. Escobar, 473 Mass. 734, 46 N.E.3d 60, 65 (2016) ).

Ex parte Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

In re Enis A.C.M., 152 A.D.3d 690, 692, 59 N.Y.S.3d 396 (N.Y. App. Div. 2017) (quoting Matter of Marisol N.H., 115 A.D.3d 185, 188-89, 979 N.Y.S.2d 643 (N.Y. App. 2014) ).

Recinos v. Escobar, 473 Mass. 734, 46 N.E.3d 60, 64 (2016) (quoting H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849 (2015) ; Matter of Marisol N.H., 115 A.D.3d 185, 188, 979 N.Y.S.2d 643 (N.Y. 2014) ).

In re J.J.X.C., 318 Ga.App. 420, 734 S.E.2d 120, 124 (2012).

8 U.S.C. § 204.11(a).