*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VELASQUEZ, Minor.

---

MARIO VELASQUEZ-TOMAS, Guardian of LMV

Appellant.

FOR PUBLICATION
November 10, 2022
9:15 a.m.

No. 360057
Ionia Probate Court
LC No. 2021-000494-GM

---

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

RICK, P.J.

Appellant, Mario Velasquez-Tomas, guardian of LMV, a minor, appeals as of right the probate court's order denying his motion for special findings of fact to apply for Special Immigrant Juvenile (SIJ) status for LMV under 8 USC 1101(a)(27)(J) with the United States Citizenship and Immigration Services (USCIS). On appeal, appellant argues that the probate court erred when it (1) concluded that the notice of service of the motion to LMV's mother was insufficient, (2) refused to find that LMV was neglected or abused by his mother, (3) failed to determine whether or not it was in LMV's best interests to return to his mother in Guatemala, his country of origin, or remain in the United States. This case presents issues of first impression regarding SIJ status proceedings. MCR 7.215(B)(2). We vacate the probate court's order and enter the accompanying order with special findings of fact to establish SIJ status for LMV. See MCR 7.216(A)(7).

## I. BACKGROUND

Appellant, LMV's uncle, initiated an action for full guardianship of LMV in December 2021, and further motioned the probate court to make the predicate factual findings necessary for LMV to apply for SIJ status, including that (1) LMV is dependent on the court, (2) his reunification with his parents was not viable because of abuse, neglect, abandonment, or a similar basis under state law, and (3) it is not in LMV's best interests to return to Guatemala. The record indicates that a copy of the petition and motion were sent by first-class mail to LMV's mother in December 2021.

-1-

The probate court held a bifurcated hearing on the guardianship petition and Motion for Special Findings in January 2022. At the hearing, the court first heard from appellant regarding the guardianship petition. LMV had been living with appellant since January 2021.[1] Appellant explained that he was able to provide financially for LMV while LMV attended school, and that he would talk to LMV when he needed to be disciplined. The probate court also heard testimony that, although LMV maintained contact with his mother, she was not providing any financial support for LMV. LMV and appellant both testified that LMV's mother did not oppose the guardianship petition. LMV's appointed guardian ad litem (GAL) expressed that LMV was in need of a guardian and observed that it was in LMV's best interest to have appellant appointed as his guardian. The probate court confirmed that LMV's father was deceased, and it granted the petition to appoint appellant as guardian of LMV.

Next, the court heard testimony in support of the motion for special findings to establish SIJ status. LMV explained that he left Guatemala and traveled to the United States in search of a better life. LMV testified that, instead of attending school, he was required to work starting when he was approximately 8 years old. When he was 12 years old, he began working alone and was forced to work in dangerous conditions, including being exposed to chemical fertilizers and harvesting equipment. In one instance, LMV was injured by an ax or machete and his mother did not seek medical care for him. Before age 12, LMV assisted with his mother's work by moving rocks. LMV testified that he had very "little" food and water in Guatemala. LMV further testified that his mother beat him with a belt or stick if he was unable to work, leaving marks, and she also hit and scolded him as punishment. LMV testified that he felt bad when his mother beat and hit him and that he would feel bad if he had to return to his mother in Guatemala. While living with appellant, LMV was able to attend school and received appropriate care, food, and shelter. The GAL recommended that the court enter an order with the special findings on the issue of SIJ status. The GAL emphasized that the testimony supported a finding that LMV had been abused and neglected by his mother, that his father was deceased, and that it was not in LMV's best interests to return to Guatemala, in part because LMV had better educational opportunities in the United States and appellant was able to take better care of LMV's needs.

Although the probate court granted the guardianship petition, the court denied the motion for SIJ status special findings. In denying the motion, the probate court found that LMV's mother had not been given proper notice of the proceeding and determined that it could not conclude that LMV was abused or neglected by his mother because she had no opportunity to refute LMV's testimony. The court made no findings regarding whether LMV's best interests would be served by returning to Guatemala, stating it was "not even sure how—what the standard would be in making that" and noting that "within a child protection proceeding . . . [the court] would not make a finding of abuse or neglect against a parent without giving the parent an opportunity to appear and respond to the allegations." Although appellant requested an adjournment to provide additional notice to LMV's mother, the court denied his request, stating, "I'm not granting the special immigration status to a young man who has entered this country illegally, and . . . whose mother has not been given an opportunity to refute the allegations." This appeal followed.

---

[1] LMV entered the country as an unaccompanied minor in December 2020.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying its decision. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). A court abuses its discretion if it "chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citations omitted). "The probate court necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citations omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted). This Court defers to the probate court on matters of credibility and gives broad deference to findings of fact made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily ascertainable to the reviewing court. *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993); MCR 2.613(C). Matters of statutory interpretation are reviewed de novo, which also applies to the interpretation of federal statutes and regulations:

> Statutory interpretation is a question of law we review de novo, as is the interpretation of administrative regulations. This standard applies to the interpretation of federal statutes and regulations, though reasonable administrative interpretations of regulations operating as statutory gap-fillers are entitled to deference. Clear and unambiguous statutory language is given its plain meaning, and is enforced as written. [*In re LFOC*, 319 Mich App 476, 480; 901 NW2d 906 (2017) (quotation marks and citations omitted).]

## III. SIJ STATUS OVERVIEW

The Immigration and Nationality Act of 1990 "established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States." *In re LFOC*, 319 Mich App at 481, quoting *In re Estate of Nina L*, 2015 Ill App 152223, ¶ 15; 397 Ill Dec 279; 41 NE3d 930 (2015). "In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States." *In re LFOC*, 319 Mich App at 484 (citation and quotation marks omitted).

There is a two-step process for obtaining SIJ status which entails "a unique hybrid procedure that directs the collaboration of state and federal systems." *Id*. at 486 (quotation marks and citation omitted). First, the state court makes predicate factual findings pertinent to the juvenile's SIJ status. *Id*. The state court must find that an individual who seeks SIJ status is under the age of 21, unmarried, and (1) dependent on the juvenile court, (2) cannot viably be reunified with one or both of their parents due to neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's best interests would not be served by returning to their country of origin. 8 USC 1101(a)(27)(J). The findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states, and are made according to state law. *In re LFOC*, 319 Mich App at 486. "The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court

entering the findings fit the federal definition of a 'juvenile court.' " *Id.* at 487 (quotation marks and citation omitted). However, the state court "is not to engage in an immigration analysis or decision." *Id.* at 486, citing *Recinos v Escobar*, 473 Mass 734, 738; 46 NE3d 60 (2016). "Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government . . . ." *In re LFOC*, 319 Mich App at 485 (quotation marks and citation omitted). After the state court makes the predicate findings, the juvenile applies to the USCIS for SIJ status. *Id.* The USCIS "engages in a much broader inquiry than state courts, and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted." *Id.* at 486 (quotation marks and citation omitted).

## IV. SERVICE OF PROCESS

As an initial matter, the probate court appeared to imply that it could not make the requested predicate findings because LMV's mother was not properly served with the motion for special findings. We conclude that the probate court erred by concluding that notice was sufficient to grant the guardianship, yet insufficient for purposes of the SIJ proceedings.

As the USCIS notes, "USCIS generally defers to the court on matters of state law," and "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law." *USCIS Policy Manual*, Vol 6: Special Immigrant Juveniles Part J, (*USCIS Policy Manual*), Ch 2 Eligibility Requirements, (updated June 10, 2022) <https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2> (accessed July 25, 2022). Accordingly, the probate court was required to apply the laws and procedures set forth under the laws and court rules of Michigan.

This Court has recognized that "courts around the country hear SIJ evidence in a variety of settings, including custody proceedings, adoption petitions and probate issues." *In re LFOC*, 319 Mich App at 486-487 (quotation marks and citation omitted). In this case, appellant sought to be appointed guardian of LMV under MCL 700.5204(b) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. MCL 700.1401(1) generally governs the notice requirements under EPIC, which provides:

> (1) If notice of a hearing on a petition is required and except for specific notice requirements as otherwise provided by supreme court rule, the petitioner shall cause notice of the time and place of the hearing on the petition to be given to each interested person or the person's attorney if the person has appeared by attorney or requested that notice be sent to the person's attorney. Unless otherwise provided by supreme court rule, notice must be given by 1 of the following methods:

> (a) Mailing a copy at least 14 days before the time set for the hearing by certified, registered, or first-class mail addressed to the person being notified at the post office address given in the person's demand for notice, if any, or at the person's office or place of residence, if known.

> (b) Delivering a copy to the person being notified personally at least 7 days before the time set for the hearing.

(c) If the address or identity of the person is not known and cannot be ascertained with reasonable diligence, publishing once a copy in a newspaper having general circulation in the county where the hearing is to be held at least 14 days before the time set for the hearing.

MCL 700.5213, which governs the procedure for a court appointed guardian for a minor, provides in relevant part:

(1) The petitioner shall give notice of the time and place of hearing of a petition for the appointment of a minor's guardian to each of the following:

(a) The minor, if 14 years of age or older.

(b) The person who had the principal care and custody of the minor during the 63 days preceding the date of the petition.

(c) Each living parent of the minor or, if neither of them is living, the adult nearest of kin to the minor.

(2) Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, *the required notices have been given*, the requirements of section 5204 or of sections 5205 and 5206 are satisfied, and the minor's welfare will be served by the requested appointment, *the court shall make the appointment*. In other cases, the court may dismiss the proceeding or make another disposition of the matter that will serve the minor's welfare. [Emphasis added.]

The guardianship petition and motion for SIJ status special findings were jointly sent by first-class mail to LMV's mother. In denying appellant's motion for SIJ special findings, the court determined that LMV's mother was not properly served. However, the probate court did *not* deny the guardianship petition for inadequate notice. Although the court voiced some concern regarding whether LMV's mother received actual notice of the hearing, the court implicitly found that the required notice was given by granting appellant full guardianship of LMV. See MCL 700.5213(2). Because the guardianship petition and the motion for special findings were jointly mailed to LMV's mother, the court erred by finding that LMV's mother did not receive proper notice of the SIJ status special findings motion, and therefore, abused its discretion by denying the motion, in part, on that basis.

## V. SIJ STATUS FINDINGS

Next, appellant argues that the probate court erred by concluding that the evidence presented did not support a finding that LMV had been neglected and abused by his mother as defined by Michigan law. Appellant further argues that the court abused its discretion by refusing to make findings related to whether reunification of LMV with his mother was viable and in LMV's best interests. We agree.

## A.  STANDARD OF PROOF

The standard of proof required for SIJ status predicate factual findings raises an issue of first impression for this Court.  See MCR 7.215(B)(2).  We hold that preponderance of the evidence standard applies.

For SIJ status, state courts must make three factual findings: (1) the juvenile is declared dependent on a juvenile court; (2) the juvenile's reunification with one or both of their parents is not viable due to neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's interests would not be served by returning to their country of origin.  8 USC 1101(a)(27)(J).  However, 8 USC 1101(a)(27)(J) does not provide a standard of proof required to make such findings.  As noted earlier, "USCIS generally defers to the court on matters of state law," and "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law." *USCIS Policy Manual*, Ch 2 Eligibility Requirements, (updated June 10, 2022) <https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2> (accessed July 25, 2022); see also *BRLF v Sarceno Zuniga*, 200 A3d 770, 775 (DC, 2019) (recognizing that the SIJ status statute does not provide a standard of proof and applying the preponderance of the evidence standard).  Moreover, the USCIS Policy Manual instructs courts to follow their state laws regarding evidentiary standards and due process.  See *USCIS Policy Manual*, Ch 3 Documentation and Evidence § A.1 (updated June 10, 2022) <https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-3> (accessed July 25, 2022) ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law.  Juvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process.").  As such, multiple courts have contemplated the applicable standard of proof to be applied when making SIJ findings.  Because this is an issue of first impression, we consider how this issue has been addressed by other jurisdictions.[2]

In *Guardianship of SHR*, 68 Cal App 5th 563, 574; 283 Cal Rptr 3d 805 (Cal App 2021), lv gtd by 501 P3d 634 (Cal 2021), the California appellate court clarified that the preponderance of the evidence standard was the standard of proof required to make SIJ findings.  Although Cal Civ Pro Code § 155 codified the court's jurisdiction to make such findings, the code did not provide a specific burden of proof for the superior court to use.  *Id*.  The court held that the preponderance of the evidence standard applied because the code did not specify the applicable burden of proof.  *Id*.  Additionally, the court rejected the substantial evidence standard adopted in an earlier case because it determined that the substantial evidence standard was inconsistent with the trial court's factual finding task within the SIJ statutory scheme.  *Id*. at 576.

Similarly, in *BRLF v Sarceno Zuniga*, 200 A3d 770, 776 (DC, 2019), the court was clear that the standard of proof for the SIJ predicate factual findings was a preponderance of the evidence.  The court recognized that the federal statute did not establish the applicable standard of

---

[2] "When interpreting federal statutes, we may look to decisions from other jurisdictions for guidance.  Although not binding, the decisions of courts from other states may be considered as persuasive authority." *In re LFOC*, 319 Mich App at 481, n 1 (quotation marks and citation omitted).

proof for SIJ status findings and that there was there was no guidance on how state courts should be applying their own state laws. *Id.* Because trial courts in the District of Columbia generally applied the preponderance of the evidence standard in civil cases unless otherwise specified, including those relating to family matters, the court concluded that the SIJ status statute required the petitioner to demonstrate by a preponderance of the evidence that the minor's reunification with their parent was "not viable" under District of Columbia law. *Id.*

In *Romero v Perez*, 463 Md 182, 197; 205 A3d 903 (2018), the Maryland high court also held that the preponderance of evidence standard applied to SIJ findings. The court recognized that the preponderance of the evidence was generally the standard of proof in civil actions, including various juvenile matters, and that the heightened clear and convincing standard was only applicable in certain limited circumstances, such as when the government sought to take "unusual coercive action", including terminating parental rights. *Id.* at 198. The court concluded that no unusual coercive action occurred in SIJ status cases because the proceedings did not involve the termination of parental rights or placing a fundamental liberty at risk. *Id.* at 198-199.[3] See also *In re Ena S Y*, 140 App Div 3d 778, 780; 34 NYS2d 99 (Ny App, 2016) (confirming the court's adoption of the preponderance of the evidence standard for SIJ status findings).

Similar to the jurisdiction above, this Court has held that "when a statute fails to state the standard that probate courts are to use to establish a particular fact, the default standard in civil cases—preponderance of the evidence—applies." *In re Murray Conservatorship*, 336 Mich App 234, 246; 970 NW2d 372 (2021) (quotation marks, citation, and alteration omitted). Accordingly, because the SIJ statute does not state the applicable standard of proof to be applied for factual findings, we conclude that the preponderance of the evidence standard applies.

## B. ABUSE AND NEGLECT

In this case, appellant sought to be appointed full guardian of LMV under EPIC, MCL 700.5213(2). EPIC does not define the terms abuse or neglect, nor does the Immigration and Nationality Act of 1990 or the regulations promulgated under it. Michigan law, however, statutorily defines the terms abuse and neglect as used in various Acts. Therefore, we review those laws for guidance.

As used in the Child Abuse and Neglect Prevention Act, MCL 722.601 *et seq.*, MCL 722.602(1)(b) provides:

> "Child abuse" means harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through nonaccidental physical or mental injury; sexual abuse, which includes a violation of section 145c of the Michigan penal code, 1931 PA 328, MCL 750.145c.

---

[3] We note that the Department of Homeland Security recently issued a rule clarifying that a state court "is not required to terminate parental rights to determine that parental reunification is not viable." 8 CFR 204.11(c)(1)(ii).

As used in MCL 722.622(g) of Michigan's Child Protection Law, MCL 722.621 *et seq.*, "child abuse" is defined as:

> harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy.

Under the Child Abuse and Neglect Prevention Act, MCL 722.602(d)[4] provides:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

Under MCL 722.622(k) of Michigan's Child Protection Law, "child neglect" is defined as:

> harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

> (i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

> (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk.

### 1. OTHER STATES' INTERPRETATION

Other jurisdictions apply the law of their own state to determine whether a minor seeking SIJ status was abused, neglected, or abandoned by his or her parents, and whether reunification is viable. See *Romero*, 463 Md at 204 (stating that the terms abuse, neglect, and abandonment "derive from state law because determining the viability of reunification is a question that lies within the expertise of the juvenile court, applying relevant State law") (alteration omitted); *Canales v Torres Orellana*, 67 Va App 759, 782; 800 SE2d 208 (2017) (stating that "by its express terms, 8 U.S.C. § 1101(a)(27)(J)(i) contemplates that state courts apply state law and render judgments accordingly"); *BRLF v Sarceno Zuniga*, 200 A3d 770, 776-777 (DC, 2019) (considering the definitions of "neglect" and "abandoned" as set forth in Subchapter I "Proceedings Regarding

---

[4] Michigan's Probate Code of 1939, MCL 712A.2(b)(1)(B), incorporates the definition of neglect as used in MCL 722.602.

Delinquency, Neglect, or Need of Supervision" of the District of Columbia Official Code in SIJ status proceedings).

Additionally, courts have broadly interpreted the meanings of "abuse," and "neglect," and "abandonment" in SIJ status proceedings. In *Romero*, the court held, that "in SIJ status cases in Maryland, the terms 'abuse,' 'neglect,' and 'abandonment' should be interpreted broadly when evaluating whether the totality of the circumstances indicates that the minor's reunification with a parent is not viable, i.e., workable or practical, due to prior mistreatment." *Romero*, 463 Md at 202. The court further held that such a holding "furthers Congress's intent in creating SIJ status," and is "consistent with Maryland's public policy of protecting children." *Id*. Similarly, in *BRLF*, the court indicated that "the trial court must recognize that Congress to some extent has put its proverbial thumb on the scale favoring SIJS status [sic]." *BRLF*, 200 A3d at 776. The court further stated:

> The purpose of the law is to permit abused, neglected, or abandoned children to remain in this country. And, in establishing the requirements for SIJS status [sic], Congress knew that there would be proof problems, *i.e.,* that those seeking the status would have limited abilities to corroborate testimony with additional evidence. For that reason, a trial court's imposition of insurmountable evidentiary burdens of production or persuasion on an SIJ petitioner would be inconsistent with the intent of the Congress. Therefore, in this international—not merely District of Columbia—environment, all the relevant factors must be understood in the light most favorable to determinations of neglect and abandonment, with an eye to the practicalities of the situation without excessive adherence to standards and interpretations that might normally apply in strictly local contexts. [*Id*. at 776-777 (citations and quotation marks omitted).]

## 2. APPLICATION

On the basis of this record, we conclude that the actions of LMV's mother, as described by LMV, constituted neglect and abuse as defined by Michigan law and the record only supported a finding that reunification was not possible.[5] Therefore, the probate court clearly erred by finding otherwise.

LMV provided unrefuted testimony that he was abused and neglected by his mother. LMV testified that his mother would beat him with a belt and branches, leaving marks on his body, when he was unable to work and that she hit him as a form of discipline. LMV testified that, instead of attending school, he was required to work when he was approximately 8 years old. When he was 12 years old, he began working alone and was forced to work in dangerous conditions, including being exposed to chemical fertilizers and harvesting equipment. LMV also suffered work-related injuries. In one incident he was injured by a machete or ax and was unable to work for one week.

---

[5] We note that reunification with his father was also not viable because LMV's father was deceased.

His mother failed to provide medical treatment for these injuries. LMV also had "little" food and water while working and was frequently tired. LMV testified that he had very "little" food and water in Guatemala, which suggests that his mother may not have provided adequate food. LMV also testified that he felt "bad" when his mother beat him and that he would feel "bad" if he was forced to return to his mother in Guatemala. Moreover, the GAL emphasized that the evidence supported a finding that LMV had been abused and neglected by his mother. The GAL also argued that LMV's best interests were served by being in the United States with his uncle, and recommended that the court enter an order with the special findings on the issue of Special Immigrant Juvenile Status.

In denying appellant's motion, the court explained:

[LMV's mother has] been given no opportunity to refute [LMV's] testimony that, in essence, she physically abused him, and on occasion, would neglect his needs. And part of the testimony, apparently, is that his mother is well aware that she [sic] came to the United States, and even assisted in his transition to this country by providing his uncle with a power of attorney. So, I cannot conclude that [LMV] was abused or neglected while in the care of his mother.

Although there was some indication that his mother was aware that LMV traveled to the United States, the evidence only supported a finding that LMV had been abused and neglected, as defined under MCL 722.622(g) and MCL 722.622(k), by his mother and that reunification was not possible. LMV described having to work in dangerous conditions instead of attending school, being injured from a work incident without being provided medical treatment, and physical abuse by his mother. Therefore, on this record, we are "left with a definite and firm conviction that a mistake has been made," and conclude that the court's abuse and neglect findings were clearly erroneous. *In re Portus*, 325 Mich App at 38. Moreover, as discussed earlier, the court abused its discretion by denying the motion for special findings on the basis that LMV's mother was not properly served. Further, to the extent that the probate court refused to make findings because LMV's mother was not present and suggested that this was a "a child protection proceeding," the court erred. The Department of Homeland Security recently clarified that a state court "is not required to terminate parental rights to determine that parental reunification is not viable." 8 CFR 204.11(c)(1)(ii). Therefore, LMV's mother's parental rights were not at issue.

The probate court further erred when it concluded that LMV had entered the United States "illegally" and relied on that finding in its analysis. In denying appellant's motion, the court stated, "I'm not granting the special immigration status to a young man who has entered this country illegally, and . . . whose mother has not been given an opportunity to refute the allegations." This Court has recognized that "the juvenile court's special findings are limited to child welfare determinations" and that "the juvenile court is not to engage in an immigration analysis or decision." *In re LFOC*, 319 Mich App at 486; see *In re Estate of Nina L*, 2015 IL App (1st) 152223 at ¶ 21 ("A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country") (quotation marks and citation omitted). Therefore, the probate court's conclusion and reliance on its finding that LMV entered the United States "illegally" was wholly improper and erroneous. Moreover, the probate court had no authority to "grant" SIJ status to LMV, as the

proceedings related solely to predicate factual findings and "the final decision regarding SIJ status rests with the federal government . . . ." *In re LFOC*, 319 Mich App at 485 (quotation marks and citation omitted).

## C.  BEST INTERESTS

Although the probate court did not make findings regarding best interests, the record is sufficient for this Court to make such findings and we exercise our discretion to do so.  See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005) ("where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded.").[6]

Other jurisdictions have approached the best-interests findings in SIJ status proceedings differently.  See *In re Dany G*, 223 Md App 707, 721-722; 117 A3d 650 (2015) (concluding that "[i]n the context of a SIJ status predicate order, the inquiry is a straight-forward comparison" of whether the child's interests would be better served by remaining in the United States or by returning to the same conditions from which the child fled from in his or her country of origin); Cf *Kitoko v Salomao*, 210 Vt 383, 393; 2019 VT 45; 215 A3d 698 (2019) (concluding that the trial court could rely on the best interest factors used in custody proceedings and "ha[d] discretion to consider other factors and also to rely upon its own common sense and experience in reaching a reasoned judgment as to the best interests of the child where the custody and SIJ statuses of the children were at issue") (quotation marks and citation omitted).

---

[6] This Court has jurisdiction to make determinations concerning the care and custody of this minor child.  MCL 600.308; MCR 5.801(A)(3); MCR 7.216(A)(7); *see In re LFOC*, 319 Mich App at 487 (explaining that under 8 CFR 204.11(a), "a juvenile court" means "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."); see also e.g., *In re Diaz v Munoz*, 118 AD3d 989, 991; 989 NYS2d 52 (2014) (concluding that the reviewing court had the authority to enter its own findings of fact and conclusions of law because the record was sufficient).

In Michigan, best interest factors are set forth in MCL 722.23[7] of the Child Custody Act, MCL 722.21 *et seq.*, as well as in MCL 710.22(g)[8] of the Michigan Adoption Code, MCL 710.21

---

[7] MCL 722.23 provides the following factors:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant . . . .

[8] MCL 710.22(g) of the Adoption Code provides:

(g) "Best interests of the adoptee" or "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court to be applied to give the adoptee permanence at the earliest possible date:

(i) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under section 39 of this chapter, the putative father and the adoptee.

(ii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(iii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under section 39 of this chapter, the home of the putative father.

(vi) The moral fitness of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, of the putative father.

(vii) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, of the putative father, and of the adoptee.

(viii) The home, school, and community record of the adoptee.

(ix) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(x) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

(xi) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody.

*et seq.* In *In re COH*, *ERH*, *JRG*, *& KBH*, 495 Mich 184; 848 NW2d 107 (2014),[9] our Supreme Court considered whether the best interest factors set forth in the Child Custody Act or the Adoption Code were more applicable in guardianship proceedings for minors. Below, the trial court applied the best interest factors set forth in the Child Custody Act. *Id*. at 190. Our Supreme Court concluded that "[b]ecause MCL 712A.19c(2) grants the trial court discretion in determining whether a guardianship is in the child's best interest, a trial court's decision regarding what factors to consider in making the best-interest determination is reviewed for an abuse of discretion." *Id*. at 202. The Court further held that, "depending on the circumstances, a case may more reasonably lend itself to application of the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court for purposes of a particular case." *Id*. at 203.

Applying those same principals recognized in *In re COH*, we hold that, for purposes of SIJ status findings, a court may apply "the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court." *Id*. We further conclude that the probate court abused its discretion by failing to make such findings. Moreover, because the record established that it is in LMV's best interests to remain in the United States, rather than return to Guatemala, we exercise our discretion to make those findings instead of remanding to the probate court. MCR 7.216(A)(7).

The record established that LMV fled Guatemala not only to find a better life, but because of the neglect and abuse he suffered by his mother. LMV testified that his mother would beat him with a stick, branches or belt when he was unable to work or to discipline him. LMV explained that he was required to work in dangerous conditions instead of attending school, and that after he suffered a work-related accident as a result of an ax, his mother did not provide him medical care. LMV further testified that he was frequently tired as a result of his hard labor and that appellant provided him food and a stable home. Importantly, LMV was denied the opportunity to receive an education in Guatemala and is able to attend school in the United States. On the other hand, appellant, whom LMV had been living with since January 2021, testified that he was able to provide financially for LMV, that LMV was able to attend school while living with him, and that he talked to LMV when LMV needed to be disciplined. LMV also testified that he received an adequate amount of food while staying with appellant. Additionally, LMV's mother was not providing any financial support for LMV. LMV's testimony also indicated that he wished to remain in the United States with appellant, and that he did not want to return to Guatemala. Moreover, the court appointed GAL argued that the evidence supported a finding that LMV's best interests were served by remaining in the United States with appellant and recommended that the court enter an order with the special findings for SIJ status. Whether using the child custody factors, adoption factors, or a combination of factors, the record clearly established a finding that LMV's best interests were served by remaining in the United States with appellant instead of returning to the conditions from which he fled, which included physical abuse, being required to work in dangerous conditions, and the complete denial of educational opportunities.

---

[9] Although *In re COH* does not involve SIJ status proceedings, it provides general guidance as to the application of best interest factors.

Vacated.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien